JILL A. GUTIERREZ (#258138)
gutierrez.jill@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:  (714) 800-1400
Facsimile:   (714) 800-1499

CASE COLLARD (#245834)
collard.case@dorsey.com
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO  80202-5549
Telephone: (303) 689-3400
Facsimile:  (303) 629-3450

Attorneys for Plaintiff
Tee Turtle, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TEE TURTLE, LLC, a Missouri limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KELLYTOY WORLDWIDE, INC. a California corporation; and KELLYTOY (USA), INC., a California corporation,<br><br>Defendants. | CASE NO:<br><br><u>District Judge</u><br><br>**COMPLAINT FOR PATENT INFRINGEMENT UNDER 35 U.S.C. § 271**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed:<br>Trial Date:          None Set |

## COMPLAINT

Plaintiff Tee Turtle, LLC, for its Complaint against Defendants Kellytoy Worldwide, Inc. and Kellytoy (USA), Inc. (collectively, "Kellytoy" or "Defendants"), states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the United States Patent Laws, 35 U.S.C. § 1, *et seq*. Defendants have infringed, and continue to infringe, directly and/or indirectly, the following United States patents owned by Tee Turtle:

      a. No. D822,127 (the "'127 Patent");

      b. No. D836,168 (the "'168 Patent");

      c. No. D860,337 (the "'337 Patent"); and

      d. No. 10,786,746 (the "'746 Patent")

(collectively, the "Tee Turtle Patents"). Copies of each of the Tee Turtle Patents are attached hereto as **Exhibit A** through **Exhibit D**, respectively.

2. Specifically, Defendants have directly and/or indirectly infringed and continue to infringe each of the Tee Turtle Patents through the manufacture, use, offering to sale, and/or sale in the United States, and/or the importation into the United States, of infringing reversible plush toys.

3. Tee Turtle seeks damages and other relief for Defendants' infringement of the Tee Turtle Patents.

## THE PARTIES

4. At all relevant times mentioned herein, Tee Turtle is and has been a Missouri limited liability company with its principal place of business in Missouri.

5. Tee Turtle was founded in 2012 by designer/CEO Ramy Badie to offer cutting edge pop-culture t-shirt designs. Tee Turtle uses original and licensed artwork to create and sell apparel to a loyal customer fan base:

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

  

 

6.  Tee Turtle also offers other popular novelty consumer goods, like the reversible plushie stuffed animals at issue here:

   

7.  Tee Turtle also offers games, including the popular Unstable Unicorns:

  

8.  Tee Turtle offers these products for sale on its websites, www.teeturtle.com and www.unstablegames.com, in retail stores, at conventions, and on other internet platforms, including on Amazon.

4

COMPLAINT FOR PATENT INFRINGEMENT

9.   At all relevant times mentioned herein, Defendants Kellytoy Worldwide, Inc. and Kellytoy (USA), Inc. (collectively "Kellytoy") are and have been California corporations with their principal place of business at 4811 S. Alameda Street, Los Angeles, California 90058.

10.   Kellytoy is a large participant in the stuffed animal market.  In February 2020, Kellytoy claimed that it has sold over 50 million of its Squishmallow toys in two years.  *See* https://www.toynews-online.biz/2020/02/10/kellytoy-celebrates-as-global-sales-of-squishmallows-surpass-50-million-since-launch/.  Kellytoy has expanded its offering to include an infringing line of Flip-A-Mallows reversible plush toys.  Kellytoy markets the product through online and retail stores throughout the United States and around the world.

11.   Tee Turtle is being harmed by Kellytoy's infringement and seeks injunctive relief to stop the harm.  And, to the extent that there is harm that is compensable by money damages, Tee Turtle would be entitled to past damages because it has marked its products and provided actual notice to Kellytoy.

## JURISDICTION AND VENUE

12.   This patent infringement action arises under the patent laws of the United States, including 25 U.S.C. § 101 *et seq.*

13.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

14.   Venue in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

15.   This Court has personal jurisdiction over Kellytoy Worldwide, Inc. and Kellytoy (USA), Inc., as they are California corporations with a principal place of business at 4811 S. Alameda Street, Los Angeles, California 90058.  Tee Turtle is informed and believes and thereupon alleges that Kellytoy is marketing their Flip-A-Mallows throughout California, including in this District.

## FACTUAL ALLEGATIONS

**A.**   **Tee Turtle's Patents and its Reversible Plushies**

4812-6020-4755\5

16. Tee Turtle holds three design patents that cover reversible plush toys. The '127 Patent, titled "Reversible Plush Toy," was filed on December 20, 2017, and issued on July 3, 2018. *See* **Exhibit A**. It includes one claim for "the ornamental design for a reversible plush toy, as shown and described" in 8 drawing sheets, which depict the design of a reversible plush toy.

17. The '168 Patent, titled "Reversible Plush Toy," was filed on May 31, 2018, and issued on December 18, 2018. *See* **Exhibit B**. It includes one claim for "the ornamental design for a reversible plush toy, as shown and described" in 8 drawing sheets, which depict the design of a reversible plush toy.

18. The '337 Patent, titled "Reversible Plush Toy," was filed on October 23, 2018, and issued on September 17, 2019. *See* **Exhibit C**. It includes one claim for "the ornamental design for a reversible plush toy, as shown and described" in 8 drawing sheets, which depict the design of a reversible plush toy. Collectively, the '127 Patent, the '168 Patent, and the '337 Patent are referred to herein as the "Tee Turtle Design Patents."

19. Tee Turtle holds a utility patent that covers reversible plush toys. The '746 Patent, titled "Reversible Toy," was filed on December 20, 2017, and issued on September 29, 2020. *See* **Exhibit D**. It includes 29 claims disclosing a novel reversible plush toy. The '746 Patent is referred to herein as the "Tee Turtle Utility Patent."

20. Each of the Tee Turtle Patents described above and attached hereto are owned by Tee Turtle, and are valid, enforceable, and currently in full force and effect.

21. Tee Turtle designed and markets a line of reversible plush toys that incorporate and practice its intellectual property rights, examples of which are available at www.teeturtle.com/collections/plushies ("Reversible Plushies"). The Reversible Plushies have been a popular and successful product line for Tee Turtle. The Reversible Plushies incorporate and adopt the design and functionality protected by the Tee Turtle Patents.

4812-6020-4755\5

### B.   Kellytoy's Infringing Activities

22.   Kellytoy markets and sells a line of products called "Flip-A-Mallows."  The Flip-A-Mallows line is an extension of the very popular Kellytoy "Squishmallow" line that they contend is like getting "two Squishmallows in one."  *See* https://www.toynews-online.biz/2020/02/10/kellytoy-celebrates-as-global-sales-of-squishmallows-surpass-50-million-since-launch/.  Kellytoy's Flip-A-Mallows misappropriate the related intellectual property, including infringement of the patented design claimed in the Tee Turtle Patents, and generally appear to copy Tee Turtle's Reversible Plushies.

23.   Kellytoy's violation of Tee Turtle's intellectual property rights has and will continue to cause significant damage to Tee Turtle's market, including lost sales, lost market share, lost reputation, and diminution of brand value.  The Flip-A-Mallows products that infringe on Tee Turtle' s rights come in a variety of styles—including, without limitation, the corgi/calico, dragon/unicorn, owl/fawn, shark/clownfish, sloth/hedgehog, and pegasus/llama Flip-A-Mallows (the "Flip-A-Mallows Products").

24.   As an example of Kellytoy's infringement, below is a comparison of one of Kellytoy's products, the sloth/hedgehog Flip-A-Mallow, with the claims of the Tee Turtle Design Patents (note that the dashed lines in the design patents provide context but are not required for infringement):

| Kellytoy's Sloth/Hedgehog Flip-a-Mallows | Tee Turtle's U.S. Patent No. D836,168 | Tee Turtle's U.S. Patent No. D822,127 | Tee Turtle's U.S. Patent No. D860,337 |
|---|---|---|---|
|  | FIG. 2 | FIG. 2 | FIG. 2 |

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

   

FIG. 9 — FIG. 9 — FIG. 9

25. A full claim chart depicting Kellytoy's infringement of the Tee Turtle Design Patents is attached hereto as **Exhibit E**.

26. As another example of Kellytoy's infringement, below is a comparison of the same Flip-A-Mallow, the sloth/hedgehog, with one of the independent claims from the Tee Turtle Utility Patent:

| U.S. Patent No. 10,786,746 Claim No. 21 | Kellytoy's Flip-A-Mallows |
|---|---|
| A reversible plush toy, comprising: | Kellytoy's Flip-A-Mallow is a reversible plush toy. |
| a first material defining a first surface; | First Material — First Surface |

4812-6020-4755\5

| a second material defining a second surface; |  |
| a fill material received between the first and the second material; | <br>The fill material is received between the first material and the second material. |
| a stitching ring coupling the first material to the second material and trapping the fill material between the first material and the second material, | <br>The fill material is trapped between the first and the second material by the stitching ring. |
| the stitching ring having a ring diameter defining an opening; wherein |  |

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

| in a first position, the first surface of the first material defines a first exterior surface of a first body shape and the second surface of the second material defines a first interior surface of the first body shape, the first body shape having a first body maximum diameter; |  |
|---|---|
| in a second position, the second surface of the second material defines a second exterior surface of a second body shape and the first surface of the first material defines a second interior surface of the second body shape; | |

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

| | |
|---|---|
| the second body shape substantially matches the first body shape and having a second body maximum diameter that is the same as the first body maximum diameter; | <br><br>First body shape  First body maximum diameter   Second body maximum diameter  Second body shape<br><br>The second body shape substantially matches the first body shape and the second body maximum diameter is the same as the first body maximum diameter. |
| the ring diameter is smaller than both the first body maximum diameter and the second body maximum diameter; and | First body maximum diameter   Second body maximum diameter<br><br>Ring diameter |
| to transition from the first position to the second position, the first material is compressed towards the second material, collapsing both the first material and the second material through the opening defined by the stitching ring until the second material | First Material     First Position<br> |

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

| expands into the second body shape. |  First Material — Second Material | First material being compressed towards the second material |
| |  First Material — Stitching ring — Second Material | First and second material collapsing through the opening defined by the stitching ring |
| |  First Material — Stitching ring — Second Material | Second material expanding into the second body shape as more of the first material passes through the stitching ring |
| |  Second body shape — Second Material | Second material expanded into the second body shape |

27.   At no time has Tee Turtle given Kellytoy permission, license, or authorization to use any of the Tee Turtle Patents.

28.   On or about March 7, 2020 Kellytoy first announced the launch of the Flip-A-Mallows Products on its Twitter account, which has over 45 thousand followers.  On its website on April 6, 2020, at https://squishmallows.com/kellytoy-expands-

12

4812-6020-4755\5

squishmallows-with-reversible-flip-a-mallows/, Kellytoy formally announced its new line of "reversible Flip-A-Mallows plushes."

29.     Even before that announcement, on March 27, 2020, Tee Turtle's counsel, Case Collard, sent a cease and desist letter to Kellytoy, informing them of their infringing activities, and enclosing copies of the '168 Patent, the '127 Patent, and the '337 Patent.  Mr. Collard further informed Kellytoy that Tee Turtle had applied for the '746 Patent, which Tee Turtle anticipated would issue in due course.

30.     Thereafter, over the course of the next several months, through their counsel, Tee Turtle and Kellytoy engaged in efforts to resolve this dispute.  Counsel exchanged correspondence on April 30, 2020, May 13, 2020, July 30, 2020, August 5, 2020, and throughout September to December 2020.  In this correspondence, Tee Turtle presented in great detail the basis of Tee Turtle's infringement claims.  Although counsel negotiated in an effort to amicably resolve the matter, the parties were unable to reach an agreement.

31.     Despite having been informed of Tee Turtle's Patents, Kellytoy continues to sell, offer for sale, distribute, and/or manufacture its infringing Flip-A-Mallows Products.  For example, below is a screenshot from Kellytoy's website, captured on December 8, 2020, showing that Kellytoy is presently offering for sale an infringing three-pack of 12 inch Flip-A-Mallows Products:



COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

32.     Kellytoy sells the infringing Flip-A-Mallows Products in direct competition with Tee Turtle's Reversible Plushies.  In some instances, Kellytoy undercuts Tee Turtle's prices by selling the infringing Flip-A-Mallows at discount retailers such as FiveBelow at prices well below the average price at which Tee Turtle sells its similarly sized Reversible Plushies.

33.     Kellytoy's marketing of its infringing Flip-A-Mallows makes clear how close a copy its products are.  Kellytoy advertises its infringing Flip-A-Mallows on various online platforms by referencing the reversible nature the Flip-A-Mallows.  For example, on its website, Kellytoy refers to the Flip-A-Mallows as "Reversible Squishmallows" and uses arrows to indicate how the Flip-A-Mallows flip one from configuration to another.

34.     Kellytoy markets the Flip-A-Mallows Products aggressively through its social media accounts.  A February 10, 2020 article on a third party website indicates that Kellytoy has over 200,000 followers across its social media accounts and has millions of consumer interactions with its content.  As an example, the article reports that Kellytoy has over 20 million views of its videos posted on TikTok alone.  On information and belief, Kellytoy's aggressive marketing online has led to significant sales of Flip-A-Mallows Products.

## COUNT I

### Patent Infringement Under 35 U.S.C. § 271 of United States Patent No. D822,127
### (Against All Defendants)

35.     Tee Turtle re-alleges and incorporates herein by this reference each of the preceding allegations in this Complaint.

36.     As described herein, Defendants' infringing Flip-A-Mallow Products have been and are infringing one or more claims of the '127 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling in the United States products that are covered by one or more claims of the '127 Patent.

37.     Tee Turtle is informed and believes and thereupon alleges that the acts and conduct of Defendants complained of herein constitute willful infringement.

38.     Defendants' infringement of the '127 Patent has caused and will continue to cause Tee Turtle substantial and irreparable injury, for which Tee Turtle is entitled to all of the relief provided by 35 U.S.C. §§ 281, 283, 284, and 285, including but not limited to injunctive relief or, should the Court find harm that is compensable by money damages, compensatory damages including lost profits and not less than the amount of a reasonable royalty, interest, costs, enhanced damages, and reasonable attorney's fees, as the court deems just and appropriate.

## COUNT II

### Patent Infringement Under 35 U.S.C. § 271 of United States Patent No. D836,168
### (Against All Defendants)

39.     Tee Turtle re-alleges and incorporates herein by this reference each of the preceding allegations in this Complaint.

40.     As described herein, Defendants' infringing Flip-A-Mallow Products have been and are infringing one or more claims of the '168 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling in the United States products that are covered by one or more claims of the '168 Patent.

41.     Tee Turtle is informed and believes and thereupon alleges that the acts and conduct of Defendants complained of herein constitute willful infringement.

42.     Defendants' infringement of the '168 Patent has caused and will continue to cause Tee Turtle substantial and irreparable injury, for which Tee Turtle is entitled to all of the relief provided by 35 U.S.C. §§ 281, 283, 284, and 285, including but not limited to injunctive relief or, should the Court find harm that is compensable by money damages, compensatory damages including lost profits and not less than the amount of a reasonable royalty, interest, costs, enhanced damages, and reasonable attorney's fees, as the court deems just and appropriate.

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

## COUNT III

### Patent Infringement Under 35 U.S.C. § 271 of United States Patent No. D860,337
### (Against All Defendants)

43.     Tee Turtle re-alleges and incorporates herein by this reference each of the preceding allegations in this Complaint.

44.     As described herein, Defendants' infringing Flip-A-Mallow Products have been and are infringing one or more claims of the '337 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling in the United States products that are covered by one or more claims of the '337 Patent.

45.     Tee Turtle is informed and believes and thereupon alleges that the acts and conduct of Defendants complained of herein constitute willful infringement.

46.     Defendants' infringement of the '337 Patent has caused and will continue to cause Tee Turtle substantial and irreparable injury, for which Tee Turtle is entitled to all of the relief provided by 35 U.S.C. §§ 281, 283, 284, and 285, including but not limited to injunctive relief or, should the Court find harm that is compensable by money damages, compensatory damages including lost profits and not less than the amount of a reasonable royalty, interest, costs, enhanced damages, and reasonable attorney's fees, as the court deems just and appropriate.

## COUNT IV

### Patent Infringement Under 35 U.S.C. § 271 of United States Patent No. 10,786,746
### (Against All Defendants)

47.     Tee Turtle re-alleges and incorporates herein by this reference each of the preceding allegations in this Complaint.

48.     As described herein, Defendants' infringing Flip-A-Mallow Products have been and are infringing one or more claims of the '746 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell,

4812-6020-4755\5

and/or selling in the United States products that are covered by one or more claims of the '746 Patent.

49.     Tee Turtle is informed and believes and thereupon alleges that the acts and conduct of Defendants complained of herein constitute willful infringement.

50.     Defendants' infringement of the '746 Patent has caused and will continue to cause Tee Turtle substantial and irreparable injury, for which Tee Turtle is entitled to all of the relief provided by 35 U.S.C. §§ 281, 283, 284, and 285, including but not limited to injunctive relief or, should the Court find harm that is compensable by money damages, compensatory damages including lost profits and not less than the amount of a reasonable royalty, interest, costs, enhanced damages, and reasonable attorney's fees, as the court deems just and appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Tee Turtle prays for judgment against Defendants, jointly and severally, as follows:

A.     That the Court enter a judgment finding that Defendants have infringed on one or more of the claims in the '127 Patent under 35 U.S.C. § 271.

B.     That the Court enter a judgment finding that Defendants have infringed on one or more of the claims in the '168 Patent 35 U.S.C. § 271.

C.     That the Court enter a judgment finding that Defendants have infringed on one or more of the claims in the '337 Patent under 35 U.S.C. § 271.

D.     That the Court enter a judgment finding that Defendants have infringed on one or more of the claims in the '746 Patent under 35 U.S.C. § 271.

E.     That the Court enter a judgment preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their investors, partners, parents, subsidiaries, divisions, successors, and assigns, from further acts of infringement of the Tee Turtle Patents during the pendency of this case or after a final judgment in this case.

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

F.     Should the Court find harm that is compensable by money damages, a judgment awarding Tee Turtle all damages adequate to compensate for each Defendant's infringement of the Tee Turtle Patents and/or each Defendant's total profits pursuant to 35 U.S.C. § 284, and in no event less than a reasonable royalty for each Defendant's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law.

G.     That the Court determine that such infringement was willful and award Tee Turtle, against each of the Defendants, treble damages under 35 U.S.C. § 284.

H.     That the Court enter an order declaring this an exceptional case and awarding Tee Turtle its costs and disbursements, including reasonable attorney's fees, under 35 U.S.C. § 285.

I.     That the Court award Tee Turtle pre- and post-judgment interest.

J.     That the Court award Tee Turtle such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Tee Turtle demands that all claims or causes of action raised in this Complaint be tried by a jury to the fullest extent possible under the United States Constitution.


Dated:  December 14, 2020                    Respectfully submitted,


By:   */s/ Case Collard*
Case Collard
DORSEY & WHITNEY LLP

Attorneys for Plaintiff
Tee Turtle, LLC

COMPLAINT FOR PATENT INFRINGEMENT

4812-6020-4755\5

# EXHIBIT A

US00D822127S

(12) **United States Design Patent**     (10) Patent No.:     **US D822,127 S**

Badie     (45) Date of Patent:     **    Jul. 3, 2018**

---

(54) **REVERSIBLE PLUSH TOY**

(71) Applicant: **TEE TURTLE, LLC**, Richmond Heighs, MO (US)

(72) Inventor: **Ramy Adly Badie**, High Ridge, MO (US)

(73) Assignee: **Tee Turtle, LLC**, Richmond Heights, MO (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/630,400**

(22) Filed: **Dec. 20, 2017**

(51) LOC (11) Cl. ............................................. **21-01**

(52) **U.S. Cl.**
USPC .......................... **D21/577**; D21/659; D21/601

(58) **Field of Classification Search**
USPC ......... D6/598; D11/158, 162; D21/576–595,
D21/601, 623, 630, 659; 446/368–369,
446/376, 428, 487; D30/160
CPC ... A63H 3/00; A63H 3/02; A63H 3/04; A63H
3/16; A63H 3/28; A63H 33/00; A63H
7/06; A63H 11/00; A63H 11/10; A63H
11/20; A63H 13/00
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,325,750 A     8/1943   Vries
D145,701 S  *  10/1946   Rodgers ....................... D21/601
(Continued)

*Primary Examiner* — Sandra L Morris

(74) *Attorney, Agent, or Firm* — Dorsey & Whitney LLP

(57)     **CLAIM**
I claim the ornamental design for a reversible plush toy, as shown and described.

**DESCRIPTION**

This application is related to U.S. patent application Ser. No. 15/849,493 filed Dec. 20, 2017 and titled "Reversible Toy," which is hereby incorporated by reference in its entirety for all purposes.
FIG. **1** is an isometric view of a reversible plush toy according to a first embodiment and showing the reversible plush toy in a first configuration.
FIG. **2** is a front elevation view of the reversible plush toy of FIG. **1**.
FIG. **3** is a rear elevation view of the reversible plush toy of FIG. **1**.
FIG. **4** is a left side elevation view of the reversible plush toy of FIG. **1**.
FIG. **5** is a right side elevation view of the reversible plush toy of FIG. **1**.
FIG. **6** is a top plan view of the reversible plush toy of FIG. **1**.
FIG. **7** is a bottom plan view of the reversible plush toy of FIG. **1**.
FIG. **8** is an isometric view of the reversible plush toy of FIG. **1** in a second configuration.
FIG. **9** is a front elevation view of the reversible plush toy of FIG. **8**.
FIG. **10** is a rear elevation view of the reversible plush toy of FIG. **8**.
FIG. **11** is a left side elevation view of the reversible plush toy of FIG. **8**.
FIG. **12** is a right side elevation view of the reversible plush toy of FIG. **8**.
FIG. **13** is a top plan view of the reversible plush toy of FIG. **8**; and,
FIG. **14** is a bottom plan view of the reversible plush toy of FIG. **8**.
The differently stippled areas indicate different color surfaces of the reversible plush toy but are not intended to indicate specific colors.
The broken lines illustrate unclaimed portions of the reversible plush toy that form no part of the claimed design.

**1 Claim, 8 Drawing Sheets**





## US D822,127 S

Page 2

(56)                     **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D175,475 | S | * | 8/1955 | Oswald ........................ D21/601 |
| 2,960,794 | A | * | 11/1960 | Johns ...................... A63H 3/24 |
| | | | | 446/183 |
| D198,091 | S | * | 4/1964 | Bonner ....................... D21/659 |
| 3,851,419 | A | | 12/1974 | Kaelin |
| D262,392 | S | | 12/1981 | Murasaki |
| D280,839 | S | * | 10/1985 | Nihill ........................ D21/659 |
| D284,056 | S | * | 6/1986 | Kinsley ...................... D21/659 |
| 4,614,505 | A | | 9/1986 | Schneider et al. |
| D291,105 | S | * | 7/1987 | Ehrenfried ................. D21/659 |
| 4,695,264 | A | | 9/1987 | McLeod, Jr. |
| D294,724 | S | * | 3/1988 | Lund ........................ D21/623 |
| D297,251 | S | * | 8/1988 | Gamazo-Canella ......... D21/630 |
| 4,781,648 | A | | 11/1988 | Garfinkel |
| 4,842,565 | A | | 6/1989 | Vonphilp, Sr. |
| 4,850,927 | A | * | 7/1989 | Caranica ............... A63H 3/003 |
| | | | | 446/369 |
| D312,287 | S | * | 11/1990 | Kolton ...................... D21/630 |
| D316,734 | S | | 5/1991 | Tak |
| 5,090,938 | A | | 2/1992 | Reynolds |
| D332,290 | S | * | 1/1993 | Altiery ...................... D21/601 |
| D334,954 | S | | 4/1993 | Calhoun |
| D342,557 | S | * | 12/1993 | Frick ........................ D21/630 |
| D343,874 | S | * | 2/1994 | Messerli .................... D21/650 |
| D369,632 | S | * | 5/1996 | Wilke ........................ D21/659 |
| D390,285 | S | * | 2/1998 | Conley ...................... D21/630 |
| D392,699 | S | * | 3/1998 | Caldwell .................... D21/659 |
| D395,930 | S | | 7/1998 | Leadbetter |
| D397,382 | S | * | 8/1998 | Gensler ..................... D21/659 |
| 5,791,963 | A | | 8/1998 | Lieberman |
| D410,971 | S | * | 6/1999 | Young ....................... D21/601 |
| D413,637 | S | | 9/1999 | McLeer |
| 5,965,182 | A | * | 10/1999 | Lindgren ............ A01K 15/026 |
| | | | | 446/386 |
| D423,152 | S | * | 4/2000 | Kelly ........................ D30/160 |
| D424,256 | S | * | 5/2000 | Lindgren ................... D30/160 |
| D438,271 | S | * | 2/2001 | Wall ......................... D11/160 |
| D471,932 | S | * | 3/2003 | Ravelo ...................... D21/659 |
| 6,645,101 | B1 | | 11/2003 | Wong |
| D486,236 | S | * | 2/2004 | Nan .......................... D21/601 |
| D500,537 | S | | 1/2005 | Fong |
| D505,290 | S | * | 5/2005 | Bourget ..................... D6/598 |
| D523,190 | S | * | 6/2006 | Oblack ...................... D30/160 |
| D546,906 | S | | 7/2007 | Aliaga |
| D556,393 | S | * | 11/2007 | Rutherford ................. D21/601 |
| D573,662 | S | * | 7/2008 | Behn ......................... D21/576 |
| D621,885 | S | | 8/2010 | Rappaport-Rowan |
| 7,788,953 | B1 | | 9/2010 | McMurray et al. |
| D627,526 | S | * | 11/2010 | Hass ......................... D21/601 |
| D634,372 | S | * | 3/2011 | Garofalo ................... D21/601 |
| D654,969 | S | | 2/2012 | Gordon |
| D661,748 | S | | 6/2012 | Gordon |
| D665,614 | S | * | 8/2012 | Lee ............................ D6/598 |
| D673,408 | S | * | 1/2013 | Randall ..................... D21/630 |
| D714,881 | S | * | 10/2014 | Michalowski .............. D21/576 |
| D763,367 | S | | 8/2016 | Jamison |
| D768,245 | S | | 10/2016 | Matthews |
| D791,250 | S | * | 7/2017 | Sielicka-Kalczynska ... D21/659 |
| 2007/0054593 | A1 | | 3/2007 | Santos |

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13

FIG. 14

# EXHIBIT B

US00D836168S

(12) **United States Design Patent**   (10) Patent No.:   **US D836,168 S**
Badie   (45) Date of Patent:   ** **Dec. 18, 2018**

(54) **REVERSIBLE PLUSH TOY**

(71) Applicant: **TEE TURTLE, LLC**, Richmond Heights, MO (US)

(72) Inventor: **Ramy Adly Badie**, High Ridge, MO (US)

(73) Assignee: **Tee Turtle, LLC**, Richmond Heights, MO (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/649,658**

(22) Filed: **May 31, 2018**

**Related U.S. Application Data**

(63) Continuation of application No. 29/630,400, filed on Dec. 20, 2017, now Pat. No. Des. 822,127.

(51) LOC (11) Cl. ............................................. **21-01**
(52) **U.S. Cl.**
USPC ........................ **D21/577**; D21/659; D21/601
(58) **Field of Classification Search**
USPC ......... D6/598; D11/158, 162; D21/576–595, D21/601, 623, 630, 659; 446/368–369, 446/376, 428, 487; D30/160
CPC ... A63H 3/00; A63H 3/02; A63H 3/04; A63H 3/16; A63H 3/28; A63H 33/00; A63H 7/06; A63H 11/00; A63H 11/10; A63H 11/20; A63H 13/00
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,325,750 | A | 8/1943 | Vries |
| D145,701 | S | 10/1946 | Rodgers |
| D175,475 | S | 8/1955 | Oswald |

(Continued)

Primary Examiner — Sandra L Morris
(74) Attorney, Agent, or Firm — Dorsey & Whitney LLP

(57) **CLAIM**
I claim the ornamental design for a reversible plush toy, as shown and described.

**DESCRIPTION**

FIG. **1** is an isometric view of a first embodiment of a reversible plush toy and showing the reversible plush toy in a first configuration.
FIG. **2** is a front elevation view of the reversible plush toy of FIG. **1**.
FIG. **3** is a rear elevation view of the reversible plush toy of FIG. **1**.
FIG. **4** is a left side elevation view of the reversible plush toy of FIG. **1**.
FIG. **5** is a right side elevation view of the reversible plush toy of FIG. **1**.
FIG. **6** is a top plan view of the reversible plush toy of FIG. **1**.
FIG. **7** is a bottom plan view of the reversible plush toy of FIG. **1**.
FIG. **8** is an isometric view of the reversible plush toy of FIG. **1** in a second configuration.
FIG. **9** is a front elevation view of the reversible plush toy of FIG. **8**.
FIG. **10** is a rear elevation view of the reversible plush toy of FIG. **8**.
FIG. **11** is a left side elevation view of the reversible plush toy of FIG. **8**.
FIG. **12** is a right side elevation view of the reversible plush toy of FIG. **8**.
FIG. **13** is a top plan view of the reversible plush toy of FIG. **8**; and,
FIG. **14** is a bottom plan view of the reversible plush toy of FIG. **8**.
The differently stippled areas indicate different color surfaces of the reversible plush toy but are not intended to indicate specific colors.
The broken lines illustrate unclaimed portions of the reversible plush toy that form no part of the claimed design.

**1 Claim, 8 Drawing Sheets**



## US D836,168 S

Page 2

(56)          **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,960,794 A | 11/1960 | Johns |
| D198,091 S | 4/1964 | Bonner |
| 3,851,419 A | 12/1974 | Kaelin |
| D262,392 S | 12/1981 | Murasaki |
| D280,839 S | 10/1985 | Nihill |
| D284,056 S | 6/1986 | Kinsley |
| 4,614,505 A | 9/1986 | Schneider et al. |
| D291,105 S | 7/1987 | Ehrenfried |
| 4,695,264 A | 9/1987 | McLeod, Jr. |
| D294,724 S | 3/1988 | Lund |
| D297,251 S | 8/1988 | Gamazo-Canella |
| 4,781,648 A | 11/1988 | Garfinkel |
| 4,842,565 A | 6/1989 | VonPhilp, Sr. |
| 4,850,927 A | 7/1989 | Caranica |
| D312,287 S | 11/1990 | Kolton |
| D316,734 S | 5/1991 | Tak |
| 5,090,938 A | 2/1992 | Reynolds |
| D332,290 S | 1/1993 | Altiery |
| D334,954 S | 4/1993 | Calhoun |
| D342,557 S | 12/1993 | Frick |
| D343,874 S | 2/1994 | Messerli |
| D369,632 S | 5/1996 | Wilke |
| D390,285 S | 2/1998 | Conley et al. |
| D392,699 S | 3/1998 | Caldwell |
| D395,930 S | 7/1998 | Leadbetter |
| D397,382 S | 8/1998 | Gensler |
| 5,791,963 A | 8/1998 | Lieberman |
| D410,971 S | 6/1999 | Young |
| D413,637 S | 9/1999 | McLeer et al. |
| 5,965,182 A | 10/1999 | Lindgren |
| D423,152 S | 4/2000 | Kelly |
| D424,256 S | 5/2000 | Lindgren |
| D438,271 S | 2/2001 | Wall |
| D471,932 S | 3/2003 | Ravelo |
| 6,645,101 B1 | 11/2003 | Wong |
| D486,236 S | 2/2004 | Nan |
| D500,537 S | 1/2005 | Fong et al. |
| D505,290 S | 5/2005 | Bourget |
| D523,190 S | 6/2006 | Oblack |
| D546,906 S | 7/2007 | Aliaga |
| D556,393 S | 11/2007 | Rutherford et al. |
| D573,662 S | 7/2008 | Behn et al. |
| D621,885 S | 8/2010 | Rappaport-Rowan |
| 7,788,953 B1 | 9/2010 | McMurray et al. |
| D627,526 S | 11/2010 | Hass |
| D634,372 S | 3/2011 | Garofalo |
| D654,969 S | 2/2012 | Gordon |
| D661,748 S | 6/2012 | Gordon |
| D665,614 S | 8/2012 | Lee |
| D673,408 S | 1/2013 | Randall |
| D714,881 S | 10/2014 | Michalowski et al. |
| D763,367 S | 8/2016 | Jamison |
| D768,245 S | 10/2016 | Matthews |
| D791,250 S | 7/2017 | Sielicka-Kalczynska |
| 2007/0054593 A1 | 3/2007 | Santos |
| 2014/0287648 A1 | 9/2014 | Rebella et al. |
| 2015/0314205 A1 | 11/2015 | Rebella et al. |



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13

FIG. 14

# EXHIBIT C



US00D860337S

(12) **United States Design Patent**
Badie

(10) Patent No.: **US D860,337 S**
(45) Date of Patent: ** **Sep. 17, 2019**

---

(54) **REVERSIBLE PLUSH TOY**

(71) Applicant: **TEE TURTLE, LLC**, Richmond Heights, MO (US)

(72) Inventor: **Ramy Adly Badie**, High Ridge, MO (US)

(73) Assignee: **TEE TURTLE, LLC**, Richmond Heights, MO (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/667,547**

(22) Filed: **Oct. 23, 2018**

**Related U.S. Application Data**

(63) Continuation of application No. 29/649,658, filed on May 31, 2018, now Pat. No. Des. 836,168, which is
(Continued)

(51) **LOC (12) Cl.** .............................................. **21-01**
(52) **U.S. Cl.**
USPC ........................................ **D21/577**; D21/601
(58) **Field of Classification Search**
USPC ......... D6/598; D11/158, 162; D21/576–595,
D21/601, 623, 630, 659; 446/368–369,
446/376, 428, 487; D30/160
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,325,750 A    8/1943 Vries
D145,701 S    10/1946 Rodgers
(Continued)

OTHER PUBLICATIONS

Youtube, "DIY Viral Reversible Plushie!!! Owl & Penguin Sock Plush—Cute Budget Xmas Gift Ideas", https://www.youtube.com/watch?v=FOcQqA6Zhqg (Accessed: Jun. 19, 2019), Oct. 10, 2017, 3 pages.

(Continued)

Primary Examiner — Sandra L Morris
(74) *Attorney, Agent, or Firm* — Dorsey & Whitney LLP

(57) **CLAIM**

I claim the ornamental design for a reversible plush toy, as shown and described.

**DESCRIPTION**

FIG. **1** is an isometric view of a reversible plush toy and showing the reversible plush toy in a first configuration.
FIG. **2** is a front elevation view of the reversible plush toy of FIG. **1**.
FIG. **3** is a rear elevation view of the reversible plush toy of FIG. **1**.
FIG. **4** is a left side elevation view of the reversible plush toy of FIG. **1**.
FIG. **5** is a right side elevation view of the reversible plush toy of FIG. **1**.
FIG. **6** is a top plan view of the reversible plush toy of FIG. **1**.
FIG. **7** is a bottom plan view of the reversible plush toy of FIG. **1**.
FIG. **8** is an isometric view of the reversible plush toy of FIG. **1** in a second configuration.
FIG. **9** is a front elevation view of the reversible plush toy of FIG. **8**.
FIG. **10** is a rear elevation view of the reversible plush toy of FIG. **8**.
FIG. **11** is a left side elevation view of the reversible plush toy of FIG. **8**.
FIG. **12** is a right side elevation view of the reversible plush toy of FIG. **8**.
FIG. **13** is a top plan view of the reversible plush toy of FIG. **8**; and,
FIG. **14** is a bottom plan view of the reversible plush toy of FIG. **8**.

(Continued)





# US D860,337 S

Page 2

The differently stippled areas indicate different color surfaces of the reversible plush toy but are not intended to indicate specific colors.

The broken lines illustrate unclaimed portions of the reversible plush toy that form no part of the claimed design.

**1 Claim, 8 Drawing Sheets**

### Related U.S. Application Data

a continuation of application No. 29/630,400, filed on Dec. 20, 2017, now Pat. No. Des. 822,127.

(58) **Field of Classification Search**
CPC ... A63H 3/00; A63H 3/02; A63H 3/04; A63H 3/16; A63H 3/28; A63H 33/00; A63H 7/06; A63H 11/00; A63H 11/10; A63H 11/20; A63H 13/00
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D175,475 S | 8/1955 | Oswald |
| 2,960,794 A | 11/1960 | Johns |
| D198,091 S | 4/1964 | Bonner |
| 3,851,419 A | 12/1974 | Kaelin |
| D262,392 S | 12/1981 | Murasaki |
| D280,839 S | 10/1985 | Nihill |
| D284,056 S | 6/1986 | Kinsley |
| 4,614,505 A | 9/1986 | Schneider et al. |
| D291,105 S | 7/1987 | Ehrenfried |
| 4,695,264 A | 9/1987 | McLeod, Jr. |
| D294,724 S | 3/1988 | Lund |
| D297,251 S | 8/1988 | Gamazo-Canella |
| 4,781,648 A | 11/1988 | Garfinkel |
| 4,842,565 A | 6/1989 | VonPhilp, Sr. |
| 4,850,927 A | 7/1989 | Caranica |
| D312,287 S | 11/1990 | Kolton |
| D316,734 S | 5/1991 | Tak |
| 5,090,938 A | 2/1992 | Reynolds |
| D332,290 S | 1/1993 | Altiery |
| D334,954 S | 4/1993 | Calhoun |

| | | |
|---|---|---|
| D342,557 S | 12/1993 | Frick |
| D343,874 S | 2/1994 | Messerli |
| D369,632 S | 5/1996 | Wilke |
| 5,649,848 A | 7/1997 | Clark |
| D390,285 S | 2/1998 | Conley et al. |
| D392,699 S | 3/1998 | Caldwell |
| D395,930 S | 7/1998 | Leadbetter |
| D397,382 S | 8/1998 | Gensler |
| 5,791,963 A | 8/1998 | Lieberman |
| D410,971 S | 6/1999 | Young |
| D413,637 S | 9/1999 | McLeer et al. |
| 5,965,182 A | 10/1999 | Lindgren |
| D423,152 S | 4/2000 | Kelly |
| D424,256 S | 5/2000 | Lindgren |
| D438,271 S | 2/2001 | Wall |
| D471,932 S | 3/2003 | Ravelo |
| 6,645,101 B1 | 11/2003 | Wong |
| D486,236 S | 2/2004 | Nan |
| D500,537 S | 1/2005 | Fong et al. |
| D505,290 S | 5/2005 | Bourget |
| D523,190 S | 6/2006 | Oblack |
| D546,906 S | 7/2007 | Aliaga |
| D556,393 S | 11/2007 | Rutherford et al. |
| D573,662 S | 7/2008 | Behn et al. |
| D621,885 S | 8/2010 | Rappaport-Rowan |
| 7,788,953 B1 | 9/2010 | McMurray et al. |
| D627,526 S | 11/2010 | Hass |
| D634,372 S | 3/2011 | Garofalo |
| D654,969 S | 2/2012 | Gordon |
| D661,748 S | 6/2012 | Gordon |
| D665,614 S | 8/2012 | Lee |
| D673,408 S | 1/2013 | Randall |
| D714,881 S | 10/2014 | Michalowski et al. |
| D763,367 S | 8/2016 | Jamison |
| D768,245 S | 10/2016 | Matthews |
| D791,250 S | 7/2017 | Sielicka-Kalczynska |
| 2007/0054593 A1 | 3/2007 | Santos |
| 2014/0220851 A1 | 8/2014 | Bennett |
| 2014/0287648 A1 | 9/2014 | Rebella et al. |
| 2015/0314205 A1 | 11/2015 | Rebella et al. |
| 2017/0136375 A1 | 5/2017 | Narayanan et al. |

OTHER PUBLICATIONS

Youtube, "Flip N Switch A Rooz Stuffed Plush Animals Turn Inside Out 2 In One Toys—Review Video Cookieswirlc", https://www.youtube.com/watch?v=jpOOPFLMQFk (Accessed: Jun. 19, 2019), Oct. 27, 2015, 3 pages.

**U.S. Patent**     Sep. 17, 2019     Sheet 1 of 8     US D860,337 S



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13



FIG. 14

# EXHIBIT D

US010786746B2

(12) **United States Patent**
Badie

(10) Patent No.: **US 10,786,746 B2**
(45) Date of Patent: **Sep. 29, 2020**

(54) **REVERSIBLE TOY**

(71) Applicant: **TEE TURTLE, LLC**, Richmond Heights, MO (US)

(72) Inventor: **Ramy Adly Badie**, High Ridge, MO (US)

(73) Assignee: **TEE TURTLE, LLC**, Richmond Heights, MO (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/849,493**

(22) Filed: **Dec. 20, 2017**

(65) **Prior Publication Data**

US 2019/0184298 A1 Jun. 20, 2019

(51) **Int. Cl.**
*A63H 3/02* (2006.01)
*A63H 3/36* (2006.01)

(52) **U.S. Cl.**
CPC ............... *A63H 3/365* (2013.01); *A63H 3/02* (2013.01)

(58) **Field of Classification Search**
USPC .............. 446/71–74, 321, 327; 473/594, 614
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,325,750 A * | 8/1943 | De Vries | A63H 3/02 446/321 |
| D145,701 S * | 10/1946 | Rodgers | D21/601 |
| D175,475 S | 8/1955 | Oswald | |
| 2,844,912 A * | 7/1958 | Sebesta John A | A63H 23/10 446/155 |
| 2,960,794 A | 11/1960 | Johns | |
| D198,091 S | 4/1964 | Bonner | |
| 3,851,419 A * | 12/1974 | Kaelin | A63H 3/12 446/321 |
| 3,864,871 A | 2/1975 | Kaelin | |
| 4,107,873 A | 8/1978 | Bauer | |
| 4,194,249 A * | 3/1980 | Thorneburg | A41B 11/003 2/239 |
| D262,392 S | 12/1981 | Murasaki | |

(Continued)

OTHER PUBLICATIONS

Youtube, "DIY Viral Reversible Plushie!!! Owl & Penguin Sock Plush—Cute Budget Xmas Gift Ideas", https://www.youtube.com/watch?v=F0cQqA6Zhqg (Accessed: Jun. 19, 2019), Oct. 10, 2017, 3 pages.

(Continued)

*Primary Examiner* — Nini F Legesse
(74) *Attorney, Agent, or Firm* — Dorsey & Whitney LLP

(57) **ABSTRACT**

The present disclosure includes embodiments directed to a reversible toy. The reversible toy may include a body including opposing first and second surfaces, the body reversible between first and second positions to alternately present the first and second surfaces as an outer body surface defining an exterior of the body. The other of the first and second surfaces may alternately define a stored body surface defining an interior cavity within the body. The reversible toy may include an opening to the interior cavity and having a diameter. At least portions of the body may collapse through the opening when the body is moved between the first and second positions. A retainer may define the diameter of the opening. The diameter of the opening may be smaller than a maximum diameter of the body to retain a shape of the body as the body switches between the first and second positions.

**29 Claims, 12 Drawing Sheets**



**US 10,786,746 B2**

Page 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,304,065 | A | * | 12/1981 | Baiera ..................... A63H 3/14 446/327 |
| 4,341,096 | A | | 7/1982 | Safrit et al. |
| 4,373,215 | A | | 2/1983 | Guigley |
| D280,839 | S | | 10/1985 | Nihill |
| D284,056 | S | | 6/1986 | Kinsley |
| 4,614,505 | A | * | 9/1986 | Schneider ........... A63H 33/004 428/11 |
| D291,105 | S | | 7/1987 | Ehrenfried |
| 4,695,264 | A | * | 9/1987 | McLeod, Jr. ........ A63H 33/004 446/321 |
| D294,724 | S | | 3/1988 | Lund |
| D297,251 | S | | 8/1988 | Gamazo-Canella |
| 4,781,648 | A | * | 11/1988 | Garfinkel ................ A63H 3/12 446/321 |
| 4,832,010 | A | | 5/1989 | Lerman |
| 4,842,565 | A | * | 6/1989 | VonPhilp, Sr. ........ A63H 3/12 446/321 |
| 4,850,927 | A | | 7/1989 | Caranica |
| D312,287 | S | | 11/1990 | Kolton |
| D316,734 | S | | 5/1991 | Tak |
| 5,090,938 | A | * | 2/1992 | Reynolds ................ A63H 3/12 434/133 |
| D332,290 | S | | 1/1993 | Altiery |
| D334,954 | S | | 4/1993 | Calhoun |
| D342,557 | S | | 12/1993 | Frick |
| D343,874 | S | | 2/1994 | Messerli |
| D369,632 | S | | 5/1996 | Wilke |
| 5,649,848 | A | | 7/1997 | Clark |
| D390,285 | S | | 2/1998 | Conley et al. |
| D392,699 | S | | 3/1998 | Caldwell |
| D395,930 | S | | 7/1998 | Leadbetter |
| 5,778,702 | A | | 7/1998 | Wrightenberry |
| D397,288 | S | | 8/1998 | Gensler |
| 5,791,963 | A | * | 8/1998 | Lieberman ............ A42B 1/004 2/195.3 |
| D410,971 | S | | 6/1999 | Young |
| D413,637 | S | | 9/1999 | McLeer |
| 5,965,182 | A | | 10/1999 | Lindgren |
| D423,152 | S | | 4/2000 | Kelly |
| D424,256 | S | | 5/2000 | Lindgren |
| D438,271 | S | | 2/2001 | Wall |
| 6,320,096 | B1 | | 11/2001 | Inoue et al. |
| 6,386,761 | B1 | | 5/2002 | Bohnsack |
| D471,932 | S | | 3/2003 | Ravelo |
| 6,645,101 | B1 | * | 11/2003 | Wong ..................... A63B 43/00 473/594 |
| D486,236 | S | | 2/2004 | Nan |
| D500,537 | S | | 1/2005 | Fong |
| D505,290 | S | | 5/2005 | Bourget |
| D523,190 | S | | 6/2006 | Oblack |
| D546,906 | S | | 7/2007 | Aliaga |
| D556,393 | S | | 11/2007 | Rutherford et al. |
| D573,662 | S | | 7/2008 | Behn et al. |
| D621,885 | S | * | 8/2010 | Rappaport-Rowan ........ D19/59 |
| 7,788,953 | B1 | * | 9/2010 | McMurray ............ D04B 1/104 66/196 |
| D627,526 | S | | 11/2010 | Hass |
| D634,372 | S | | 3/2011 | Garofalo |
| D654,969 | S | | 2/2012 | Gordon |
| D661,748 | S | | 6/2012 | Gordon |
| D665,614 | S | | 8/2012 | Lee |
| D673,408 | S | | 1/2013 | Randall |
| D714,881 | S | | 10/2014 | Michalowski et al. |

| | | | | |
|---|---|---|---|---|
| D763,367 | S | | 8/2016 | Jamison |
| D768,245 | S | | 10/2016 | Matthews |
| D791,250 | S | | 7/2017 | Sielicka-Kalczynska |
| 2007/0054593 | A1 | * | 3/2007 | Santos .................. A63H 3/003 446/369 |
| 2009/0205106 | A1 | | 8/2009 | Sohn |
| 2012/0307010 | A1 | | 12/2012 | Evertt et al. |
| 2014/0220851 | A1 | | 8/2014 | Bennett |
| 2014/0287648 | A1 | * | 9/2014 | Rebella ................ A63H 33/004 446/73 |
| 2015/0314205 | A1 | * | 11/2015 | Rebella ................ A63H 3/005 446/73 |
| 2017/0136375 | A1 | | 5/2017 | Narayanan et al. |
| 2018/0020742 | A1 | | 1/2018 | Johnson |
| 2019/0275436 | A1 | | 9/2019 | Badie |
| 2019/0275437 | A1 | | 9/2019 | Badie et al. |

OTHER PUBLICATIONS

Youtube, "Flip N Switch a Rooz Stuffed Plush Animals Turn Inside Out 2 in One Toys—Review Video Cookieswirlc", https://www.youtube.com/watch?v=jpOOPFLMQFk (Accessed: Jun. 19, 2019), Oct. 27, 2015, 3 pages.
IP Australia, "Second Examination Report dated Nov. 26, 2019", 5 pages.
MultiiMay, "DIY Reversible Octopus Plush", YouTube, https://www.youtube.com/watch?v=kec-kxN4Ka0, Sep. 14, 2017.
"Caltoy Inc Little Bo Peep and Sheep 2 in 1 Puppet", https://www.ebay.com/c/15017103118.
"Disney Parks Frozen Anna Elsa Flip 2 in 1 Topsy Turvy Reversible Plush Doll 15", https://www.ebay.com/itm/Disney-Parks-Frozen-Anna-Elsa-Flip-2-in-1-Topsy-Turvy-Reversible-Plush-Doll-15/184072663574?hash=item2adb95f216:g:Bc4AA0SwG11d6q-e.
"Dole Discovery Channel Plush Brown Bear Reversible World Globe original tag 1999", https://www.ebay.com/itm/Dole-Discovery-Channel-Plush-Brown-Bear-Reversible-World-Globe-original-tag-1999-/202754209837.
"Used Jurassic World 11" Yellow Velociraptor raptor Dinosaur Plush Doll,Dino,Park, https://www.ebay.ca/itm/Used-Jurassic-World-11-Yellow-Velociraptor-raptor-Dinosaur-Plush-Doll-Dino-Park-/133397963351?oid=293528351983.
"Vintage Digimon Agumon Evolving Greymon 4" Plush Doll Figure Yutaka Japan 1999, https://www.ebay.com/itm/Vintage-Digimon-Agumon-Evolving-Greymon-4-Plush-Doll-Figure-Yutaka-Japan-1999-/233212775092.
"Wild Republic Switch a Silly Fox and Owl 2 in 1 Plush Toy 7" 2014, https://www.ebay.com/itm/Wild-Republic-Switch-A-Silly-Fox-and-Owl-2-in-1-Plush-Toy-7-2014/333303407700?epid=1437462732&hash=item4d9a6e6454:g:J9gAA0SwcQVdXeEp.
Entertainment Earth, "Minecraft Reversible Plush Case", https://www.youtube.com/watch?v=ckV_by3kgtU, Feb. 25, 2015.
Kawaiipandacrafts, "Hello Kitty Reversible Plush-Turkey", https://www.youtube.com/watch?v=7tha3F86TY0, Dec. 27, 2012.
Mo'S Chateau, "Switch a Rooz Dog/Cat Paws & Purrs Reversible Plush Toy Demo", https://www.youtube.com/watch?v=u5taVw6S2U0, Feb. 28, 2015.
TTPM Toy Reviews, "Cut the Rope Reversible Plush-Sad/Box from Round 5", https://www.youtube.com/watch?v=bfcod92CzLA, Apr. 2, 2013.
TTPM Toy Reviews, "Transforming Plush from Disney", https://www.youtube.com/watch?v=MVmrocKi70g, Mar. 23, 2011.

* cited by examiner



FIG. 1

FIG. 2



FIG. 3



FIG. 4



FIG. 5

FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13



FIG. 14



300

DEFINE HOLLOW BODY OF
REVERSIBLE TOY — 302

DEFINE OPENING THROUGH
THE BODY — 304

PASS AT LEAST PORTIONS OF THE
BODY THROUGH THE OPENING — 306

DEFINE DIAMETER OF OPENING BY
A RETAINER — 308

ATTACH ONE OR MORE APPENDAGES
TO THE BODY — 310

FIG. 15

US 10,786,746 B2

**1**

## REVERSIBLE TOY

### CROSS REFERENCE TO RELATED APPLICATIONS

This application is related to U.S. Design Pat. Application No. 29/630,400, filed 20 Dec. 2017 and titled "REVERS-IBLE PLUSH TOY", which issued as U.S. Design Pat. No. D822,127 on 3 Jul. 2018, which is hereby incorporated by reference in its entirety for all purposes.

### TECHNICAL FIELD

The technology disclosed herein relates generally to toys, and more specifically to a reversible plush toy.

### BACKGROUND

Toys adapted to convert from one configuration to another are known in the art and cover a wide range of toys from mechanical robots that convert into vehicles to soft doll toys that convert between differing configurations. For example, some traditional toys include portions that selec-tively interlock with each other in alternative arrangements.

Although there are a variety of toys that provide some transition, it is important to have a toy that can be easily and quickly reversed between positions to present different appearances or configurations.

The information included in this Background section of the specification is included for technical reference purposes only and is not to be regarded subject matter by which the scope of the present disclosure is to be bound.

### SUMMARY

The present disclosure provides a reversible toy, as described below and defined in the accompanying claims. The reversible toy may include a body including opposing first and second surfaces. The body may be reversible between first and second positions to alternately present the first and second surfaces as an outer body surface defining an exterior of the body. The other of the first and second surfaces may alternatingly define a stored body surface defining an interior cavity within the body. The reversible toy may include an opening to the interior cavity defined by the body and having a diameter. At least portions of the body may collapse through the opening when the body is moved between the first and second positions. The revers-ible toy may include a retainer defining the diameter of the opening. The diameter of the opening may be smaller than a maximum diameter of the body to retain a shape of the body as the body switches between the first and second positions.

Embodiments of the present disclosure may also include a reversible plush toy. The reversible plush toy may include a hollow body defined by opposing first and second surfaces and reversible between first and second positions. Each of the first and second positions of the body may include an outer body surface and a stored body surface. The outer body surface may define an exterior of the body. The stored body surface may define an interior cavity within the body. The reversible plush toy may include an opening to the interior cavity defined by the body. At least portions of the first and second surfaces may collapse through the opening when the body is moved between the first and second positions. In the first position, the first surface may define the outer body surface and the second surface may define the interior cavity

**2**

within the body. In the second position, the second surface may define the outer body surface and the first surface may define the interior cavity within the body.

Embodiments of the present disclosure may also include a method of reversing a plush toy. The method may include defining first and second opposing surface of a body of the toy, defining an opening through the body, and passing at least portions of the body through the opening to alternat-ingly present the first surface or the second surface as an exterior of the body. The other of the first surface or the second surface may alternatingly collapse within the body to define an interior cavity within the body. The diameter of the opening may be smaller than a maximum diameter of the body.

This Summary is provided to introduce a selection of concepts in a simplified form that are further described below in the Detailed Description. This Summary is not intended to identify key features or essential features of the claimed subject matter, nor is it intended to be used to limit the scope of the claimed subject matter. A more extensive presentation of features, details, utilities, and advantages of the present disclosure as defined in the claims is provided in the following written description of various embodiments of the claimed subject matter and illustrated in the accompa-nying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is an isometric view of a reversible toy in a first orientation according to one embodiment of the present disclosure.

FIG. **2** is an isometric view of the reversible toy in a second orientation according to one embodiment of the present disclosure.

FIG. **3** is another isometric view of the reversible toy in the first orientation.

FIG. **4** is an exploded view of a body portion of the reversible toy according to one embodiment of the present disclosure.

FIG. **5** is an exploded view of an appendage portion of the reversible toy according to one embodiment of the present disclosure.

FIG. **6** is an exploded view of the reversible toy of FIG. **1** and showing the connection between the body portion of FIG. **4** and the appendage portion of FIG. **5**.

FIG. **7** is a cross-sectional view of the reversible toy in first orientation and taken along line **7-7** of FIG. **1**.

FIG. **8** is a cross-sectional view of the reversible toy being moved from the first orientation to the second orientation.

FIG. **9** is a cross-sectional view of the reversible toy in the second orientation and taken along line **9-9** of FIG. **2**.

FIG. **10** a perspective view of the reversible toy in the first orientation.

FIG. **11** is a perspective view of the reversible toy being moved from the first orientation to the second orientation.

FIG. **12** is another perspective view of the reversible toy being moved from the first orientation to the second orien-tation and showing a portion of the body being collapsed through an opening of the body.

FIG. **13** is another perspective view of the reversible toy being moved from the first orientation to the second orien-tation and showing a portion of the body being further collapsed through the opening.

FIG. **14** is a perspective view of the reversible toy in the second orientation.

US 10,786,746 B2

3

FIG. **15** is a flow chart illustrating a method of reversing a reversible toy according to one embodiment of the present disclosure.

DETAILED DESCRIPTION

The present disclosure relates to a toy reversible between positions to alternately present different portions or faces of the toy as an exterior surface thereof. In one example, the toy includes a body defining an interior cavity. As the toy is reversed between positions, the surface of the body defining the interior cavity may be switched to at least partially define an exterior surface of the body. At or about the same time, the surface of the body defining the exterior surface of the body may be switched to at least partially define the interior cavity of the body. In this manner, the reversible toy may permit a user to alternately present a desired surface of the toy as a visible surface and store or position an opposing surface at least partially within the body.

The toy may include an opening to the interior cavity, the opening having a diameter. In such embodiments, at least portions of the body may collapse through the opening when the body is moved between positions to alternately present different portions or faces of the toy as an exterior surface thereof. In some embodiments, the toy may include a retainer, such as a retaining ring or other structure, defining or setting the diameter of the opening. The diameter of the opening may be defined or restrained by the retainer to allow selective collapsing of the body through the opening while also retaining a shape of the body in each position. For example, the diameter of the opening may be smaller than a maximum diameter of the body to limit undesired collapsing of the body through the opening to retain a shape of the body in each position.

In some embodiments, the toy may include on or more appendages attached to the body to better simulate an animal or human character. Like the hollow body, the appendages may be reversed between positions to alternately present different surfaces or sides of the appendages as an exterior surface thereof. The appendages may be reversible with the body. For example, the appendages may be reversed between positions contemporaneously with movement of the body between positions.

Turning to the figures, illustrative embodiments of the present disclosure will now be discussed in more detail. FIG. **1** is an isometric view of a reversible toy **100** in a first orientation. FIG. **2** is an isometric view of the reversible toy **100** in a second orientation. FIG. **3** is another isometric view of the reversible toy **100** in the first orientation. Referring to FIGS. **1-3**, the reversible toy **100** includes a hollow body **102** defined by or including opposing first and second surfaces **104**, **106**. The first and second surfaces **104**, **106** may extend on opposing sides of the body **102**, such as generally parallel to each other, in a spaced apart relationship, or any combination thereof. The body **102** may define all or a portion of the reversible toy **100**. For instance, the reversible toy **100** may be defined entirely by the body **102**, or the body **102** may define only a part of the reversible toy **100**, such as a head portion, a body portion, an arm portion, and/or a leg portion of the reversible toy **100**, among others. In this manner, the body **102** may define the core or central portion of the reversible toy **100**, with other portions of the reversible toy **100**, if any, being minor appendages thereto.

As explained more fully below, the body **102** is reversible between first and second positions. For example, the body **102** may be moved between the first and second positions to alternately present different configurations or characteris-

4

tics of the body **102**. The different configurations or characteristics of the body **102** may be selected for aesthetic reasons. For example, reversing the body **102** between the first and second positions may present differing aesthetic properties of the reversible toy **100**. Depending on the particular embodiment, the first and second positions may present the same or different configurations or characteristics of the body **102**. For instance, the first position of the body **102** may present a first configuration or characteristic of the body **102** (see FIG. **1**). The first configuration or characteristic of the body **102** may be a first facial expression, a first color combination, a first body shape, or a first tactile feel, among others, or any combination thereof. The second position of the body **102** may present a second configuration or characteristic of the body **102** (see FIG. **2**). The second configuration or characteristic of the body **102** may be a second facial expression, a second color combination, a second body shape, or a second tactile feel, among others, or any combination thereof. Depending on the particular application, the first and second positions may differ in at least one characteristic. For example, the first and second positions may differ in one characteristic (e.g., facial expression only), two characteristics (e.g., facial expression and color), three characteristics (e.g., facial expression, color, and tactile feel), etc., or in all or substantially all characteristics. Though illustrated as presenting different visible or physical characteristics between the first and second positions, in some embodiments, the first and second positions may be identical or substantially identical to each other. In such embodiments, the arrangement of the reversible toy **100** may allow the body **102** to reverse between positions while still maintaining the same or generally the same characteristics between the first and second positions.

With continued reference to FIGS. **1-3**, in each of the first and second positions, the body **102** includes an outer body surface **120** defining an exterior of the body **102** and a stored body surface **122** defining an interior cavity **124** within the body **102**. As described herein, the body **102** is reversible between the first and second positions to alternately present the first and second surfaces **104**, **106** as the outer body surface **120** defining the exterior of the body **102**. In such embodiments, the other of the first and second surfaces **104**, **106** alternately defines the stored body surface **122** defining the interior cavity **124** within the body **102** as the body **102** is reversed between positions. For instance, in the first position of the body **102**, the first surface **104** may define the outer body surface **120** defining the exterior of the body **102**, with the second surface **106** defining the stored body surface **122** defining the interior cavity **124** within the body **102**. Similarly, in the second position of the body **102**, the second surface **106** may define the outer body surface **120** defining the exterior of the body **102**, with the first surface **104** defining the stored body surface **122** defining the interior cavity **124** within the body **102**. In some embodiments, the outer body surface **120** may be sized and shaped such that the stored body surface **122** is positioned entirely or substantially entirely within the interior cavity **124** of the body **102**. In this manner, the stored body surface **122** may be concealed from view in each of the first and second positions of the body **102**. Alternatively, the stored body surface **122** may be visible from limited perspectives, such as from only a bottom perspective view or similar.

FIG. **4** is an exploded view of the body **102** according to one embodiment of the present disclosure. As shown in FIG. **4**, the body **102** may include a first material layer **140** and a second material layer **142**. In such embodiments, the first material layer **140** may define the first surface **104**. Simi-

Exhibit D, Page 66

US 10,786,746 B2

5

larly, the second material layer **142** may define the second surface **106**. Depending on the particular application, the body **102** may include fill material **144** positioned within a sealed cavity **141** or other enclosed compartment defined between the first and second material layers **140**, **142** (see FIG. **7**). For example, soft stuffing material may be positioned between the first and second material layers **140**, **142** to provide a soft feel or plushness to the reversible toy **100**. The fill material **144** may allow the first and second material layers **140**, **142** to move relative to each other as the body **102** switches between the first and second positions. For example, the fill material **144** may allow the first and second material layers **140**, **142** to slide relative to each other, compress towards or expand away from each other, or any combination thereof to facilitate movement of the body **102** between positions.

The first and second material layers **140**, **142** may be flexible to facilitate movement of the body **102** between positions. For instance, the first and second material layers **140**, **142** may be formed at least partially from fabric sheets or material, as explained below. The first and second material layers **140**, **142** may be formed from identical or different materials or fabrics. For example, the material or fabric of the first and second material layers **140**, **142** may be chosen to provide a same or differing characteristic of the first and second portions of the body **102**. More specifically, the material or fabric of the first material layer **140** may be chosen to provide a first characteristic of the body **102** (e.g., a first color and/or tactile feel). In like manner, the material or fabric of the second material layer **142** may be chosen to provide a second characteristic of the body **102** (e.g., a second color and/or tactile feel).

With continued reference to FIG. **4**, the body **102** may include a plurality of sections or portions coupled together. In one embodiment, as shown in FIG. **4**, each of the first and second material layers **140**, **142** may include a plurality of body portions **150** coupled together. The body portions **150** may be arranged to provide a desired size and shape of the body **102** once the body portions **150** are coupled together. For example, the body portions **150** may be sized and shaped such that when coupled together the body portions **150** define a globoid shape to the body **102**, though other shapes are contemplated including cylindrical, ellipsoid, etc. As shown in FIG. **4**, each body portion may include one or more side edges **152** and a terminal edge **154**. In such embodiments, at least portions of the one or more side edges **152** of one body portion may be attached to the side edges **152** of an adjacent body portion, such as by stitching. As explained more fully below, the terminal edges **154** may be arranged to couple the first material layer **140** to the second material layer **142**. For example, the terminal edges **154** of the first material layer **140** may be stitched to the terminal edges **154** of the second material layer **142** to connect the first and second material layers **140**, **142** together in a manner that defines the sealed cavity **141**. In some embodiments, the first and second material layers **140**, **142** may be connected together only at the terminal edges **154**. Alternatively, the first and second material layers **140**, **142** may be connected together at other positions, whether in combination with the connection at the terminal edges **154** or not. Though FIG. **4** illustrates the body **102** formed from a plurality of material layers connected together, in some embodiments, the body **102** may be formed from a single material layer for easier assembly and/or reduced manufacturing costs. The body portions **150** may be sized and shaped as desired. For

6

instance, the body portions **150** may be symmetrical about a longitudinal axis, include a tapering width along their lengths, or otherwise.

Referring to FIG. **3**, the reversible toy **100** includes an opening **170** to the interior cavity **124**. As shown, the opening **170** may be defined by the body **102**, such as by the terminal edges **154** of the body portions **150**. As described herein, at least portions of the body **102** collapse through the opening **170** when the body **102** is moved between the first and second positions. For example, as detailed more fully below, at least portions of the first and second surfaces **104**, **106** collapse through the opening **170** to alternately present one of the first and second surfaces **104**, **106** as the outer body surface **120** and the other of the first and second surfaces **104**, **106** as the stored body surface **122** within the interior cavity **124**. As shown in FIG. **3**, the opening **170** includes a diameter D. The diameter D of the opening **170** may be defined or restrained to allow collapsing of the first and second surfaces **104**, **106** therethrough while also retaining a shape of the body **102** as the body **102** switches between the first and second positions. For example, the diameter D of the opening **170** may be large enough to allow collapsing of the first and second surfaces **104**, **106** of the body **102** therethrough as the body **102** is moved between positions. Additionally or alternatively, the diameter D of the opening **170** may be smaller than a maximum diameter $D_{MAX}$ of the body **102** to retain a shape of the body **102** in each of the first and second positions (see FIGS. **7** and **9**). For instance, the diameter D of the opening **170** may be smaller than a maximum diameter $D_{MAX}$ of the body **102** to limit undesired collapsing of the body **102** through the opening **170** to facilitate an upstanding position of the body **102**.

Referring to FIGS. **3** and **4**, the reversible toy **100** may include a retainer **180** defining the diameter D of the opening **170**. The retainer **180** may be substantially any element or structure operable to set or determine the diameter D of the opening **170**. Depending on the particular application, the retainer **180** may be a separate element connected to the body **102** or may be defined as part of the body **102** itself. As one example, the retainer **180** may be a ring positioned adjacent to the opening **170**. The ring may include many configurations. For example, as shown in FIGS. **3** and **4**, the ring may be defined as a line of stitching. Alternatively, the ring may be plastic or metal, among others. In one example, the retainer **180** may be defined by the length of the terminal edges **154**. More specifically, the total length of the terminal edges **154** may be less than a maximum circumference of the body **102** to define the diameter D of the opening **170** smaller than a maximum diameter $D_{MAX}$ of the body **102**.

FIG. **5** is an exploded view of an appendage assembly of the reversible toy **100** according to one embodiment of the present disclosure. Referring to FIGS. **1**-**3** and **5**, the reversible toy **100** may include one or more appendages **190** attached to the body **102**. As shown, the appendages **190** may include opposing first and second sides **192**, **194**. As explained below, the appendages **190** may be moved between positions to alternately present the first side **192** or the second side **194** as an exterior surface of the appendages **190**. In such embodiments, the exterior surface **196** of the appendages **190** may correspond with the outer body surface **120** of the body **102**. For example, in one position of the appendages **190**, the first side **192** of the appendages **190** may define the exterior surface **196** of the appendages **190** when the first surface **104** of the body **102** defines the outer body surface **120** of the body **102**. In like manner, in another position of the appendages **190**, the

US 10,786,746 B2

<table>
<tr><td>7</td><td>8</td></tr>
</table>

second side **194** of the appendages **190** may define the exterior surface **196** of the appendages **190** when the second surface **106** of the body **102** defines the outer body surface **120** of the body **102**.

In one embodiment, the appendages **190** may be reversible with the body **102** to alternately present different configurations or characteristics of the appendages **190**. For example, the appendages **190** may be reversible between first and second configurations corresponding to the first and second positions of the body **102**. Like the first and second positions of the body **102**, the first and second configurations of the appendages **190** may present the same or different configurations or characteristics of the appendages **190**. For instance, the first configuration of the appendages **190** may present a first characteristic of the appendages **190**. The first characteristic of the appendages **190** may be a first color combination, a first shape, or a first tactile feel, among others, or any combination thereof. The second configuration of the appendages **190** may present a second characteristic of the appendages **190**. The second characteristic of the appendages **190** may be a second color combination, a second shape, or a second tactile feel, among others, or any combination thereof. The first and second configurations of the appendages **190** may differ in at least one characteristic, such as color, visual appearance, or tactile feel.

The appendages **190** may be arranged in many suitable configurations. For example, the appendages **190** may be defined by first and second portions **210**, **212** connected together. The first and second portions **210**, **212** may be identical or substantially identical to each other. In some embodiments, the first and second portions **210**, **212** may be mirror images of each other. Depending on the particular application, at least one of the first and second portions **210**, **212** may include more than one appendage **190**. For example, the first portion **210** may include a first set of appendages **220**. The first set of appendages **220** may include one appendage **190**, two appendages **190**, three appendages **190**, four appendages **190**, or more than four appendages **190**. The second portion **212** may include a second set of appendages **222**. Like the first set of appendages **220**, the second set of appendages **222** may include one appendage **190**, two appendages **190**, three appendages **190**, four appendages **190**, or more than four appendages **190**. The first portion **210** may include the same number of appendages **190** or a different number of appendages **190** compared to the second portion **212**. For instance, the first portion **210** may include a greater number of appendages **190**, the same number of appendages **190**, or a lesser number of appendages **190** than the second portion **212**.

Referring to FIG. **5**, the first and second portions **210**, **212** may each include first and second layers **230**, **232** connected together. In such embodiments, the first layer **230** may define the first side **192** of the appendages **190**. Similarly, the second layer **232** may define the second side **194** of the appendages **190**. In some embodiments, fill material **234** (e.g., soft stuffing material) may be positioned between the first and second layers **230**, **232** (see FIG. **7**). The fill material **234** within the appendages **190** may provide a soft feel or plushness to the reversible toy **100**. Additionally or alternatively, the fill material **234** within the appendages **190** may provide a three-dimensional depth or shape to the appendages **190**. Like the first and second material layers **140**, **142** of the body **102**, the first and second layers **230**, **232** of the appendages **190** may be formed at least partially from fabric sheets or material. The first and second layers **230**, **232** may be formed from identical or different materials or fabrics. For example, the material or fabric of the first

layer **230** may be chosen to provide a same or differing characteristic of the material or fabric of the second layer **232**.

FIG. **6** is an exploded view of the reversible toy **100** showing the connection between the body **102** and the appendages **190**. Referring to FIG. **6**, the first and second portions **210**, **212** may be connected together to define an appendage assembly **250**. As shown, each of the first and second portions **210**, **212** may include a central body **252** with the one or more appendages **190** extending therefrom. The central body **252** may include opposing ends **254**. In such embodiments, the opposing ends **254** of the first portion **210** may be connected to the opposing ends **254** of the second portion **212** to define the appendage assembly **250** extending around the body **102**. As shown, the central body **252** of each of the first and second portions **210**, **212** may be curved along its length to match the circular shape of the opening **170**. In such embodiments, the appendages **190** may extend radially away from the central body **252**. In one embodiment, the appendages **190** may be radially spaced from one another, with distal portions **256** of the appendages **190** spaced further apart from one another than proximal portions **258** of the appendages **190**. In one embodiment, the appendages **190** may be spaced equidistantly from one another in a radial arrangement. Though the figures illustrate the first and second portions **210**, **212** connected together to define the appendage assembly **250**, in some embodiments the first and second portions **210**, **212** may be spaced from each other. In this manner, the appendage assembly **250** may be defined by one or more discrete elements, whether connected together or otherwise.

As shown in FIG. **6**, the appendage assembly **250** may be connected to the body **102** to define the reversible toy **100**. The appendage assembly **250** may be connected to the body **102** in many suitable manners. As one example, the appendage assembly **250** may be attached to the body **102** by the retainer **180**, though other configurations are contemplated. For example, the appendage assembly **250** may be attached to the body **102** independent from the retainer **180**, such as via a line of stitching separate from the retainer **180**. Depending on the desired characteristics of the reversible toy **100**, the appendage assembly **250** may be attached to the body **102** adjacent to the opening **170**. In such embodiments, the appendages **190** may conceal or otherwise hide the opening **170** from view from one or more perspectives.

As described herein, the appendages **190** in combination with the body **102** may combine to simulate an animal or human character, whether real, legendary, or fictional. For instance, the body **102** of the reversible toy **100** may simulate a head and/or body portion of an animal or human character. In such embodiments, the appendages **190** may simulate legs, arms, tentacles, horns, ears, hair, or other body appendages of an animal or human character. As one example, FIGS. **1-3** illustrate the reversible toy **100** simulating an octopus, though other configurations are contemplated. For example, the body **102** and appendages **190** may combine to simulate a turtle, a narwhal, a dragon, a bunny, a unicorn, a panda, a penguin, a puppy, or a cat, among others. In some embodiments, the appendages **190** may be attached to the body **102** such that the appendages **190** are visible in only one of the first and second orientations of the reversible toy **100**. For example, the appendages **190** may be attached to the first material layer **140** such that the appendages **190** are visible only when the body **102** is positioned in its first position. In such examples, the appendages **190** may be positioned within the interior cavity **124** when the body **102** is moved to its second position. In some embodiments,

Exhibit D, Page 68

US 10,786,746 B2

9

the appendages **190** may be omitted from the reversible toy **100**, and only the body **102** itself may simulate the animal or human character.

FIG. **7** is a cross-sectional view of the reversible toy **100** in the first orientation. FIG. **8** is a cross-sectional view of the reversible toy **100** being moved from the first orientation to the second orientation. FIG. **9** is a cross-sectional view of the reversible toy **100** in the second orientation. FIG. **10** is a perspective view of the reversible toy **100** in the first orientation. FIG. **11** is a perspective view of the reversible toy **100** being moved from the first orientation to the second orientation. FIG. **12** is another perspective view of the reversible toy **100** being moved from the first orientation to the second orientation and showing a portion of the body **102** being collapsed through the opening **170**. FIG. **13** is another perspective view of the reversible toy **100** being moved from the first orientation to the second orientation and showing the body **102** further collapsed through the opening **170**. FIG. **14** is a perspective view of the reversible toy **100** in the second orientation. Referring to FIGS. **7** and **10**, the reversible toy **100** may be positioned in a first orientation in which the body **102** is positioned in its first position, as described above. Depending on the particular application, the appendages **190** may also be positioned in their first configuration when the reversible toy **100** is positioned in the first orientation. In the first orientation shown in FIGS. **7** and **10**, the first surface **104** of the body **102** may define the outer body surface **120** thereof. Additionally, the first side **192** of the appendages **190** may define the exterior surface **196** thereof. As shown in FIG. **7**, the second surface **106** of the body **102** may define the stored body surface **122** defining the interior cavity **124** within the body **102** when the reversible toy **100** is positioned in the first orientation.

The reversible toy **100** may be moved to a second orientation as desired. For example, at any point of operation or play, the reversible toy **100** may be moved from its first orientation to a second orientation reversing the orientations of the body **102** and/or appendages **190**. Referring to FIGS. **8** and **11-13**, to move the reversible toy **100** from the first orientation to the second orientation, the body **102** may be at least partially collapsed through the opening **170** to reverse the orientations of the first and second surfaces **104**, **106** of the body **102**. More specifically, at least portions of the body **102** may be pushed, pulled, or otherwise collapsed through the opening **170** by a user to reverse the orientations of the first and second surfaces **104**, **106**. As shown in FIGS. **9** and **14**, once the body **102** is sufficiently collapsed through the opening **170**, the reversible toy **100** may be positioned in the second orientation in which the body **102** is positioned in its second position, as described above. Depending on the particular application, the appendages **190** may also be positioned in their second configuration when the reversible toy **100** is positioned in the second orientation. In the second orientation shown in FIGS. **9** and **14**, the second surface **106** of the body **102** may define the outer body surface **120** thereof. Additionally, the second side **194** of the appendages **190** may define the exterior surface **196** thereof. As shown in FIG. **9**, the first surface **104** of the body **102** may define the stored body surface **122** defining the interior cavity **124** within the body **102** when the reversible toy **100** is positioned in the second orientation.

The reversible toy **100** may be moved back to its first orientation as desired. Moving the reversible toy **100** from the second orientation to the first orientation may be accomplished in reverse order from that described above. For example, the body **102** may be at least partially collapsed

10

through the opening **170** to reverse the orientations of the first and second surfaces **104**, **106** such that the body **102** is positioned in its first position and/or the appendages **190** are positioned in their first configuration. The reversible toy **100** may be reversed as desired. For example, a user may reverse the reversible toy **100** as desired for play, fun, amusement, or otherwise.

Depending on the particular application, the appendages **190** may or may not be collapsed through the opening **170** when the reversible toy **100** is moved between the first and second orientations. For example, depending on the particular animal or human character simulated by the reversible toy **100**, the appendages **190** may be positioned such that movement of the body **102** between positions does not collapse the appendages **190** through the opening **170** (see FIGS. **7-14**). In other embodiments, however, the appendages **190** may be attached to the body **102** such that movement of the body **102** between positions collapses the appendages **190** through the opening **170** to position the appendages **190** within the interior cavity **124** within the body **102**, or vice versa.

FIG. **15** is a flow chart illustrating a method **300** of reversing a plush toy, such as reversible toy **100**. Referring to FIG. **15**, the method **300** includes defining the body **102** of the reversible toy **100** (Block **302**), defining the opening **170** through the body **102** (Block **304**), and passing at least portions of the body **102** through the opening **170** (Block **306**). The body **102** may include first and second surfaces **104**, **106**. The diameter D of the opening **170** may be smaller than a maximum diameter $D_{MAX}$ of the body **102**. Passing portions of the body **102** through the opening **170** may alternatingly present the first surface **104** or the second surface **106** as an exterior of the body **102** (e.g., as the outer body surface **120**). The other of the first surface **104** or the second surface **106** may be alternatingly collapsed within the body **102**, such as within the interior cavity **124** of the body **102**. In some embodiments, defining the body **102** may include attaching a plurality of body portions **150** together. Attachment of the plurality of body portions **150** may define the shape of the body **102**. For example, attaching the body portions **150** together may define a globoid-type shape to the body **102**, though other shapes are contemplated.

With continued reference to FIG. **15**, the method **300** may include defining the diameter D of the opening **170** by the retainer **180** (Block **308**). For example, as noted above, the retainer **180** may be a line of stitching or other structure arranged to limit expansion of the opening **170**.

In some embodiments, the method **300** may include attaching one or more appendages **190** to the body **102** (Block **310**). For instance, the one or more appendages **190** may be attached to the body **102** adjacent to the opening **170**. In one embodiment, the one or more appendages **190** may be attached to the body **102** at the opening **170**. Attachment of the one or more appendages **190** to the body **102** may define the diameter D of the opening **170**.

It should be noted that any of the features in the various examples and embodiments provided herein may be interchangeable and/or replaceable with any other example or embodiment. As such, the discussion of any component or element with respect to a particular example or embodiment is meant as illustrative only.

All directional references (e.g., upper, lower, upward, downward, left, right, leftward, rightward, top, bottom, above, below, vertical, horizontal, clockwise, and counterclockwise) are only used for identification purposes to aid the reader's understanding of the examples of the present disclosure, and do not create limitations, particularly as to

US 10,786,746 B2

<table>
<tr><td>11</td><td>12</td></tr>
</table>

the position, orientation, or use of the present disclosure unless specifically set forth in the claims. Joinder references (e.g., attached, coupled, connected, joined and the like) are to be construed broadly and may include intermediate members between the connection of elements and relative movement between elements. As such, joinder references do not necessarily infer that two elements are directly connected and in fixed relation to each other.

In some instances, components are described by reference to "ends" having a particular characteristic and/or being connected with another part. However, those skilled in the art will recognize that the present disclosure is not limited to components which terminate immediately beyond their point of connection with other parts. Thus the term "end" should be broadly interpreted, in a manner that includes areas adjacent rearward, forward of or otherwise near the terminus of a particular element, link, component, part, member or the like. In methodologies directly or indirectly set forth herein, various steps and operations are described in one possible order of operation but those skilled in the art will recognize the steps and operation may be rearranged, replaced or eliminated without necessarily departing from the spirit and scope of the present disclosure. It is intended that all matter contained in the above description or shown in the accompanying drawings shall be interpreted as illustrative only and not limiting. Changes in detail or structure may be made without departing from the spirit of the present disclosure as defined in the appended claims.

The invention claimed is:

1. A reversible toy comprising:
a body including first and second material layers defining opposing first and second surfaces, the first and second material layers defining a sealed cavity, the sealed cavity positioned between the first and second material layers, wherein the body reversible between first and second positions to alternately present the first and second surfaces as an outer body surface defining an exterior of the body, the other of the first and second surfaces alternately defining a stored body surface defining an interior cavity within the body, wherein the exterior of the body defines the same shape in both the first and second positions;
a fill laterial occupying the sealed cavity, wherein the fill material occupies the entire space throughout the sealed cavity when the first or second surface defines the stored body surface defining in the interior cavity;
an opening to the interior cavity, having a diameter, wherein at least portions of the body collapse through the opening when the body is moved between the first and second positions; and
a retainer defining the diameter of the opening, the diameter of the opening being smaller than a maximum diameter of the body to retain a shape of the body as the body switches between the first and second positions, wherein a diameter of the retainer and the opening remains substantially constant as the body switches between the first and second positions.

2. The reversible toy of claim 1, wherein the retainer is a ring positioned adjacent to the opening.

3. The reversible toy of claim 2, wherein the ring is defined as a line of stitching and a portion of the body extends over the retainer during the transition between the first and second positions.

4. The reversible toy of claim 1, further comprising one or more appendages attached to the body adjacent to the opening.

5. The reversible toy of claim 4, wherein the one or more appendages are reversible with the body to alternatingly present opposing sides of the one or more appendages as an exterior surface corresponding with the outer body surface of the body.

6. The reversible toy of claim 4, wherein the one or more appendages are defined by a first portion including a first set of appendages and a second portion including a second set of appendages.

7. The reversible toy of claim 6, wherein at least one of the first and second portions includes more than one appendage.

8. The reversible toy of claim 4, wherein the retainer attaches the one or more appendages to the body.

9. The reversible toy of claim 4, wherein the body in combination with the one or more appendages combine to simulate an animal.

10. The reversible toy of claim 4, wherein the one or more appendages remain in the same position as the body reverses between the first and second positions.

11. The reversible toy of claim 10, wherein reversing the body between the first and second positions alternatingly presents opposing sides of the one or more appendages as an exterior surface corresponding with the outer body surface of the body.

12. The reversible toy of claim 1, wherein the body comprises a plurality of body portions coupled together to define a globoid shape to the body.

13. The reversible toy of claim 1, wherein the stored body surface extends through the opening and outside the diameter of the retainer to be connected to the outer body surface of the body.

14. The reversible toy of claim 1, wherein the retainer is positioned within the sealed cavity between the first and second material layers.

15. The reversible toy of claim 1, wherein a circumference of the retainer remains substantially constant as the body switches between the first and second positions.

16. A reversible toy comprising:
a hollow plush body including first and second material layers defining opposing first and second surfaces and a sealed enclosed cavity between the layers, the body reversible between first and second positions, wherein in each of the first and second positions of the body includes an outer body surface defining an exterior of the body and a stored body surface defining an interior cavity within the body;
an opening to the interior cavity defined by the body, wherein at least portions of the first and second surfaces collapse through the opening when the body is moved between the first and second positions; and
a retainer defining a diameter of the opening, the retainer being defined by stitching coupling the first and second material layers together and having a predefined size that does not change as the body moves between the first and second positions;
wherein in the first position, the first surface defines the outer body surface and the second surface defines the interior cavity within the body;
wherein in the second position, the second surface defines the outer body surface and the first surface defines the interior cavity within the body;
wherein the body defines the same shape in both the first position and the second position.

17. The reversible toy of claim 16, wherein the retainer defines the diameter of the opening smaller than a maximum

US 10,786,746 B2

13 14

diameter of the body to retain a shape of the body in each of the first and second positions.

**18**. The reversible toy of claim **16**, wherein:

the body further comprises fill material positioned between the first and second material layers.

**19**. The reversible toy of claim **18**, wherein the fill material allows the first and second material layers to move relative to each other as the body switches between the first and second positions.

**20**. The reversible toy of claim **16**, wherein the one or more appendages remain in the same position regardless of the position of the body.

**21**. A reversible plush toy, comprising:

a first material defining a first surface;

a second material defining a second surface;

a fill material received between the first material and the second material;

a stitching ring coupling the first material to the second material and trapping the fill material between the first material and the second material, the stitching ring having a ring diameter defining an opening; wherein

in a first position, the first surface of the first material defines a first exterior surface of a first body shape and the second surface of the second material defines a first interior surface of the first body shape, the first body shape having a first body maximum diameter;

in a second position, the second surface of the second material defines a second exterior surface of a second body shape and the first surface of the first material defines a second interior surface of the second body shape;

the second body shape substantially matches the first body shape and having a second body maximum diameter that is the same as the first body maximum diameter;

the ring diameter is smaller than both the first body maximum diameter and the second body maximum diameter; and

to transition from the first position to the second position, the first material is compressed towards the second material, collapsing both the first material and the second material through the opening defined by the stitching ring until the second material expands into the second body shape.

**22**. The reversible plush toy of claim **21**, wherein

in the first position, the second material further defines a first bottom surface of the first body shape; and

in the second position, the first material further defines a second bottom surface of the second body shape.

**23**. The reversible plush toy of claim **21**, wherein

in the first position, the second material extends over the stitching ring; and

in the second position, the first material extends over the stitching ring.

**24**. The reversible plush toy of claim **21**, further comprising one or more appendages coupled to the first material and the second material via the stitching ring.

**25**. The reversible plush toy of claim **24**, wherein the appendages remain in the same position in both the first position and the second position of the body.

**26**. The reversible plush toy of claim **21**, wherein the retainer remains open in both the first position and the second position.

**27**. The reversible plush toy of claim **21**, wherein

first terminal edges of the first material are coupled to second terminal edges of the second material by the stitching ring; and

the stitching ring restrains the ring diameter during the transition between first position and second position.

**28**. The reversible plush toy of claim **27**, wherein the first and second materials are coupled only at the stitching ring.

**29**. The reversible plush toy of claim **27**, wherein the first terminal edges comprise all of the terminal edges of the first material and the second terminal edges comprise all of the terminal edges of the second material.

* * * * *

# EXHIBIT E

| Kellytoy's corgi/calico Flip-A-Mallow | Tee Turtle's U.S. Patent No. D836,168 | Tee Turtle's U.S. Patent No. D822,127 | Tee Turtle's U.S. Patent No. D860,337 |
|---|---|---|---|
|  | \nFIG. 1 | \nFIG. 1 | \nFIG. 1 |
|  | \nFIG. 2 | \nFIG. 2 | \nFIG. 2 |
|  | \nFIG. 3 | \nFIG. 3 | \nFIG. 3 |
|  | \nFIG. 4 | \nFIG. 4 | \nFIG. 4 |
|  | \nFIG. 5 | \nFIG. 5 | \nFIG. 5 |



