UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tee Turtle, LLC, | Case No. 2:20-cv-11301-MCS-MAA |
| Plaintiff, | **ORDER DENYING MOTION AND AMENDED MOTION FOR PRELIMINARY INJUNCTION [7, 18] AND DENYING REQUEST TO STRIKE REPLY [32]** |
| v. | |
| Kellytoy Worldwide, Inc. et al., | |
| Defendant. | |

Plaintiff Tee Turtle, LLC ("Tee Turtle") moves for a preliminary injunction enjoining Defendants Kellytoy Worldwide, Inc. and Kellytoy (USA), Inc. (collectively, "Kellytoy") from making, using, and selling its "Flip-A-Mallow" products. ("Mot.," ECF No. 7; *see also* ECF No. 18 (Amended Motion noticing hearing).) Kellytoy filed a response ("Opp.," ECF No. 21) and evidentiary objections (ECF No. 22). Tee Turtle filed a reply ("Reply," ECF No. 24), a response to the evidentiary objections (ECF No. 25), and its own evidentiary objections (ECF No. 26). Kellytoy filed a request to strike the Reply (ECF No. 32), to which Tee Turtle responded (ECF No. 37) and filed an amended reply ("Am. Reply," ECF No. 38). Kellytoy responded to Tee Turtle's evidentiary objections (ECF No. 47).

1

The parties also filed various notices and objections concerning potential cross-examination of witnesses at the hearing. *See* ECF Nos. 23, 27, 28, 29, 33, 34. The Court held a hearing on February 22, 2021. The Court finds that the requested cross-examination is neither necessary nor helpful at this stage and **DENIES** the requests. For the following reasons, the Court **DENIES** the motion for preliminary injunction. The Court also **DENIES** the request to strike the Reply.

## I.    BACKGROUND

Founded in 2012, Tee Turtle "offer[s] cutting edge pop-culture t-shirt designs" and "other popular novelty consumer goods, like the reversible plushie stuffed animals" ("Reversible Plushies") embodying the patents at issue in this case. *See* Compl. ¶¶ 5-6. (ECF No. 1.) Examples of those Reversible Plushies are shown below.



Tee Turtle filed this patent infringement action against Kellytoy, alleging that, by making and selling reversible plush toys, Kellytoy infringes three of Tee Turtle's design patents and one utility patent embodied by its Reversible Plushies (*i.e.*, U.S. Patent Nos. D822,127 (the "D127 Patent"), D836,168 (the "D168 Patent"), D860,337 (the "D337 Patent"), and 10,786,746 (the "'746 Patent"). *See* Compl. ¶¶ 1-2. Kellytoy, "a large participant in the stuffed animal market," sells "Squishmallow" toys. *Id.* ¶ 10. Tee Turtle alleges that, in addition to selling 50 million of its popular Squishmallow toys, Kellytoy infringes Tee Turtle's patents by selling reversible Flip-A-Mallows. *Id.* ¶ 10.

Tee Turtle's patents cover reversible plush toys. Tee Turtle's design patents (the D127, D168, and D337 Patents) claim "the ornamental design for a reversible plush toy, as shown and described," with each patent covering slightly different aspects of the

claimed design, as shown below by the non-broken lines.

| **USPN D860,337** | **USPN D822,127** | **USPN D836,168** |
|---|---|---|
|  |  |  |
|  |  |  |

*See* D127, D168, and D337 Patents at Claim and Description.

Tee Turtle's utility patent, the '746 Patent, entitled Reversible Toy, discloses a reversible toy that "may include a body including opposing first and second surfaces. The body may be reversible between first and second positions to alternatingly present the first and second surfaces as an outer body surface defining an exterior of the body." *See* '746 Patent at 1:38-42. Although "[t]oys adapted to convert from one configuration to another [were already] known in the art," the '746 Patent explains that, "it is important to have a toy that can be easily and quickly reversed between positions to present different appearances or configurations." *Id.* at 1:26-28. Figure 1 of the '746 Patent depicts "an isometric view of a reversible toy in a first orientation according to one embodiment of the present disclosure." *Id.* at 2:30-33; *see also id.* at Fig. 1. Figure 2 of the '746 Patent depicts "an isometric view of the reversible toy in a second orientation according to one embodiment of the present disclosure." *Id.* at 2:34-36; *see also id.* at Fig. 2.



Tee Turtle alleges that its Reversible Plushies "have been a popular and successful product line for Tee Turtle." *Id.* Tee Turtle alleges further that, "Kellytoy's Flip-A-Mallows misappropriate" Tee Turtle's "intellectual property, including infringement of the patented design claimed in the Tee Turtle Patents, and generally appear to copy Tee Turtle's Reversible Plushies." *Id.* ¶ 22. Tee Turtle claims that, "Kellytoy's violation of Tee Turtle's intellectual property rights has and will continue to cause significant damage to Tee Turtle's market, including lost sales, lost market share, lost reputation, and diminution of brand value." *Id.* ¶ 23. As an example of the alleged infringement, Tee Turtle provides "a comparison of one of Kellytoy's products, the sloth/hedgehog Flip-A-Mallow, [alongside] the claims of the Tee Turtle Design Patents," as shown below. *Id.* ¶ 24.

| Kellytoy's Sloth/Hedgehog Flip-a-Mallows | Tee Turtle's U.S. Patent No. D836,168 | Tee Turtle's U.S. Patent No. D822,127 | Tee Turtle's U.S. Patent No. D860,337 |
|---|---|---|---|
| | FIG. 2 | FIG. 2 | FIG. 2 |

*Id.*

As a result of Kellytoy's alleged infringing activities, Tee Turtle filed this patent infringement action. *See* Compl. ¶¶ 35-50.  In its present Motion, Tee Turtle seeks a preliminary injunction preventing Kellytoy from making and selling its Flip-A-Mallows.

## II.   LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). As such, in patent cases like in other cases, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "Furthermore, a patentee must establish a causal nexus between the infringement and the alleged harm." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016).

"With regard to the first factor—establishing a likelihood of success on the merits—the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). "If the accused infringer 'raises a substantial question concerning either infringement or validity,' then the patentee has not established that it

is likely to succeed on the merits, and a preliminary injunction is not appropriate." *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1366 (Fed. Cir. 2013).

Additionally, when considering the *Winter* factors, a preliminary injunction may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. *Winter*, 555 U.S. at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v. Destination Films*, No. 2:16-CV-05719-SVW (JCx), 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (citing *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

## III.   DISCUSSION

### A.   Evidentiary Objections

The Court has read and considered the parties' competing evidentiary objections to the declarations filed in support of their respective briefs, as well as the responses filed thereto. *See* ECF Nos. 22 (Kellytoy's Objections to Badie Declaration), 25 (Tee Turtle's Objections to Mizrahi Declaration), 26 (Tee Turtle's Response to Kellytoy's Objections), 30 (Tee Turtle's Objections to the Wilson Declaration), 47 (Kellytoy's Response to Tee Turtle's Objections).

"[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, a district court may give inadmissible evidence, including hearsay, weight in deciding a preliminary injunction. *See, e.g., Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Although evidentiary issues are still relevant at this stage, these issues properly go to weight rather than admissibility. *Garcia v. Green Fleet Systems, LLC*, No. CV 14-6220 PSG (JEMx), 2014 WL 5343814, at *5 (C.D. Cal. Oct. 10, 2014). Accordingly, the Court has considered the parties' objections when deciding how to weigh the relevant evidence; where the Court has expressly relied on evidence that is subject to an evidentiary

objection, the Court has **OVERRULED** the objection.

## B.     Request to Strike and Improper Content

As a preliminary matter, the Court addresses the parties' competing arguments regarding improperly filed documents. First, Tee Turtle asks the Court to disregard arguments made in Kellytoy's Opposition wherein Kellytoy incorporates by reference certain information from the Mizrahi Declaration and the Wilson Declaration. *See* Reply at 8; Am. Reply at 4. Second, Kellytoy asks the Court to strike Tee Turtle's over-length reply brief, which contains 30 pages instead of 10, as required by the Court's Standing Order. *See* ECF No. 32. In its response to the request to strike, Tee Turtle apologizes for the oversight in misreading the Court's order, but Tee Turtle argues that good cause supports allowing the extra pages nonetheless, given Kellytoy's incorporation by reference of voluminous material. *See* ECF No. 37. If the Court does not accept the over-length Reply, Tee Turtle asks the Court to instead accept its shortened Amended Reply. *Id.*

Considering that each party has fallen short of following Court rules and orders concerning briefing, the Court declines to strike any of the relevant documents or portions thereof. Instead, in the interest of completeness and reaching the correct result on this motion, the Court has considered all of the parties' various filings and supporting arguments. The Court finds no prejudice will ensue to either party by considering the entire record, especially where the parties had an opportunity to make any necessary responsive arguments at the hearing.

The parties are advised, however, that the Court will not accept ongoing rule violations by either party. The Court therefore admonishes the parties to comply precisely with the Local Rules and this Court's orders, including those concerning page limitations and requirements for briefs. *See, e.g.*, L.R. 7-5 – 7-10.

\\\
\\\

**C.     Likelihood of Success on the Merits**

1. Legal Framework

Under the first preliminary injunction factor, likelihood of success on the merits, Tee Turtle must "prove that success in establishing infringement is more likely than not." *Trebro Mfg., Inc. v. Firefly Equipment*, LLC, 748 F.3d 1159, 1166 (Fed. Cir. 2014) (internal quotation marks and citation omitted). As part of this analysis, if Kellytoy "raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (internal quotation marks omitted); *see also Abott Labs. v. Andrx Pharmas., Inc.*, 473 F.3d 1196, 1201 (Fed. Cir. 2007).

2. Design Patents

*a.     Claim Construction*

When considering a design patent, "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). "[A] district court's decision regarding the level of detail to be used in describing the claimed design is a matter within the court's discretion, and absent a showing of prejudice, the court's decision to issue a relatively detailed claim construction will not be reversible error." *Id.* On the other hand, "the court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful." *Id.* The Federal Circuit has cautioned district courts about "the risks entailed in [providing] such a [detailed verbal] description," including "the risk of placing undue emphasis on particular features of the design and the risk that

a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Id.* at 680.

In this case, Tee Turtle asks the Court to "adopt the images in each of Tee Turtle's design patents as the interpretation of the patent, noting that dashed lines in the drawings are used to provide context and do not form part of the claimed design." Mot. at 11.

Kellytoy responds that the design patents, "each claiming different levels of detail for the same octopus design," include two categories of design elements: "(1) a 'generally spherical' body depicted in various views and (2) a crevice on the underside of the body of a specified shape." Opp. at 5. Kellytoy notes that Tee Turtle "ignored the crevice element," which Kellytoy argues should "limit the claim to the specific shape/pattern of the crevice disclosed in the patents," because the crevice is "dictated solely by function." *Id.* at 6. To avoid conferring utility patent protection on the claimed crevice design, Kellytoy suggests that, to infringe, "the accused goods must contain the exact pattern of the crevice disclosed in the patents." *Id.*

Because the protected designs are easily discernable from the disclosures in Tee Turtle's design patents, the Court concludes that, in this case, a detailed verbal description would not be helpful. Kellytoy's arguments regarding particular design elements (*e.g.*, "generally spherical," "crevice") are more relevant to infringement and are considered in that context below. The Court thus construes each design patent as claiming the ornamental design for a reversible plush toy as depicted in the drawing sheets, with features illustrated by broken lines and stippling excluded from the claimed design.

b.   *Infringement*

In the context of design patents, the "ordinary observer test" is "the sole test for determining whether a design patent has been infringed." *Egyptian Goddess*, 543 F.3d at 678. Under that test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is

such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* at 670 (internal quotation marks omitted). This means that "infringement will not be found unless the accused article embodies the patented design or any colorable imitation thereof." *Id.* at 678 (internal quotation marks and alteration omitted). If two designs are "plainly dissimilar," the patentee cannot meet its burden. *Id.* Conversely, if two designs "are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id.* "Where there are many examples of similar prior art designs," then "differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Id.*

Invoking this test, Tee Turtle argues that an ordinary observer viewing a Kellytoy Flip-A-Mallow and a Tee Turtle Reversible Plushie embodying the design patents "would find the products nearly indistinguishable." Mot. at 11. Therefore, Tee Turtle concludes that the products are "substantially similar" for infringement purposes, with the only distinguishing features (*e.g.*, facial expressions) not part of the patent claim limitations. *Id.* at 10-11. Tee Turtle provides the following comparison chart in support of its arguments.

In response, Kellytoy counters that, "the ordinary observer would not confuse one product for the other" because "they are plainly dissimilar." Opp. at 7. In support, Kellytoy avers that, both the body shape and the appearance of the crease/crevice on the underside of the Flip-A-Mallows are radically different from the drawings in the asserted design patents." *Id.* at 7-8. Noting Tee Turtle's acknowledgement that its patents protect "'generally spherical' articles," Kellytoy argues dissimilarity because its Flip-A-Mallows "have much longer (more oval than spherical) bodies." *Id.* at 8 (quoting Mot. at 5:13-14). Kellytoy offers the following comparison chart to show the difference.

Fig. 9 from '168 Patent     Flip-A-Mallows          Flip-A-Mallows
                             Clownfish/Shark Owl 1    Clownfish/Shark 2



Opp. at 8. Further, Kellytoy argues that Tee Turtle's own comparison chart with the Sloth/Hedgehog (shown above) likewise depicts the differences between the claimed generally spherical shape and Flip-A-Mallow shapes.

Observing that Tee Turtle did not analyze the similarity (or dissimilarity) between the claimed crevice design and any accused crevice design, Kellytoy argues that this omission alone warrants a finding of non-infringement. Opp. at 8. Further, Kellytoy argues that, in any event, the crevices in various Flip-A-Mallows are different from the claimed designs, as well as from each other. Opp. at 8-9. Kellytoy also notes that its Flip-A-Mallows "lack the four equidistant stitched lines spanning the height of the body depicted in the '127 Patent," as well as "the 'tentacles' depicted in the '337 Patent." *Id.* at 8 n.3. Because "the spherical shape and the underside crevice claimed in the asserted design patents are plainly dissimilar," Kellytoy argues no further analysis is warranted. *Id.* at 9. Even so, considering the "multiple prior art designs substantially

closer to the designs in the asserted design patents," Kellytoy argues that a person familiar with the prior art would not be deceived into believing the Flip-A-Mallows are the same as the claimed designs. *Id.* at 9.

Applying the ordinary observer test to the design patents, the Court concludes that Tee Turtle has not shown a likelihood of substantial similarly regarding the claimed designs in the D337 and D127 Patents. Rather, there is a substantial question that these designs are plainly dissimilar from the accused designs because significant ornamental aspects claimed in those patents are absent from Flip-A-Mallows. Specifically, both patents include an ornamental stitching design comprised of two equidistant stitched lines starting at the base, crisscrossing over the top of the toy, and ending on the opposite side of the base. This ornamental stitching is claimed in both the first and second configurations. In contrast, Flip-A-Mallows lack this ornamental stitching in both reversible configurations. *Compare, e.g.*, D127 Patent and D337 Patent at Figs. 2, 6, 9, 13 *with* Opp. at 8, 10 (Clownfish/Shark Flip-A-Mallow).

Additionally, the D337 Patent claims an ornamental tentacle design in both configurations that Flip-A-Mallows lack. *Compare* D337 Patent *with* Opp. at 8, 10; *see also* Mizrahi Decl., Exs. 1, 2. These ornamental features are key to the D127 and D337 Patents, respectively, because these features are what distinguish those patents from the broader D168 Patent, which is discussed below. The following table demonstrates the dissimilarities in the ornamental stitching and tentacle designs.

| D127 Patent | D337 Patent | Flip-A-Mallow |
|---|---|---|
|  FIG. 6 |  |  |



Thus, applying the level of attention an ordinary observer would to these designs, the Court concludes that Tee Turtle has not shown a likelihood that the Flip-A-Mallow design is substantially the same as the design claimed in the D127 and D337 patents, such that it would deceive an observer to buy a Flip-A-Mallow mistakenly thinking it is a Reversible Plushie.

Turning to the D168 Patent, the Court first resolves the parties' dispute concerning the claimed crevice design.[1] Focusing only on the ornamental aspects of the design (as opposed to the functionality of flipping the toys through an opening), the Court agrees with Tee Turtle that an ordinary observer "would not scrutinize the precise wrinkles and shadows of the 'crevice'" in its overall observance of the toys. Reply at 5-6 (Am. Reply at 3); *see, e.g.*, *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another."). Thus, applying the level of attention an ordinary observer would to the crevice design through which the toy reverses, the Court concludes that Tee Turtle has shown a likelihood that the accused crevice designs are sufficiently similar to the claimed designs that an ordinary observer, looking at the bottom of the toys as depicted

---

[1] This crevice analysis applies equally to all three design patents, but it is immaterial to the Court's conclusions regarding the D127 and D337 patents, owing to the overall design dissimilarities discussed above.

below, might mistake one for the other.

| D168 Patent | Flip-A-Mallow Examples |
|---|---|
| | |

The Court notes that, the relevance of the crevice design is not the precise way in which it wrinkles; rather, it is that this particular "opening" design was selected for the reversible aspect of the toys, *i.e.*, the claimed crevice looks more like the hole in the center of a bagel rather than, *e.g.*, a long, narrow opening, a rectangular opening, or some other opening design. Thus, the Court considers this design, as opposed to its functionality, as part of the overall ordinary observer analysis for the accused products.

Unlike the D127 and D337 Patents that claim more detailed ornamentations, the D168 Patent sweeps more broadly for reversible plush toys. In addition to the crevice design discussed above, the D168 Patent claims the generally spherical shape for the body of a reversible toy. Applying the level of attention an ordinary observer would to this ornamental design, along with the crevice design, the Court concludes that, on the current preliminary record, Tee Turtle has shown a likelihood that the D168 Patent claimed design and accused designs are substantially the same.

| D168 Patent | Flip-A-Mallow Examples |
|---|---|
| | |



Even if the ordinary observer would conclude that a close question would remain as to substantial similarity, the absence of similar reversible-toy prior art in this case supports the Court's conclusion. As the Federal Circuit explained, if "there are many examples of similar prior art designs," then "differences between the claimed and accused designs" will more likely "become significant to the hypothetical ordinary observer" familiar with the prior art. *Egyptian Goddess*, 543 F.3d at 678. That is, if Kellytoy had come forward with such examples, smaller differences between its Flip-A-Mallows and the design claimed in the D168 Patent would become more significant. Kellytoy, however, did not do so. Rather, as Tee Turtle observes (Reply at 6-7; Am. Reply at 3), and as shown below, none of Kellytoy's allegedly similar prior art designs comprises a generally spherical, *reversible* plush toy with a crevice design, as claimed in the D168 Patent.[2]



| FIGS. '168 patent | CN 303711656 S 06-15-2016 | KR 30-0898598 03-16-2017 | CN 303702996 S 06-08-2016 | EUIPO Des. 004117307-0011 07-24-2017 | Flip-A-Mallows |

*See* Opp. at 10.

---

[2] The octopus ornamentation of this prior art is inapposite for the additional reason that the D168 Patent does not claim an octopus design.

Having found a likelihood of substantial similarity between the D168 Patent design and the Flip-A-Mallow design, the Court next turns to Kellytoy's invalidity arguments.[3]

### c.    Invalidity

 "[P]atent[s] enjoy[] the same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). When "the alleged infringer responds to [a] preliminary injunction motion by launching an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial." *Id.* Then, "to avoid a conclusion that it is unable to show a likelihood of success," the patentee carries "the burden of responding with contrary evidence, which of course may include analysis and argument." *Id.* The Court "does not resolve the validity question" at this stage, but instead "assess[es] [] the persuasiveness of the challenger's evidence," recognizing that it is a preliminary stage. *Id.* "Instead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Id.*

Following *Egyptian Goddess*, the Federal Circuit concluded that, "the ordinary observer test must logically be the sole test for [design patent] anticipation as well." *Int'l Seaway*, 589 F.3d at 1240. Thus, "[f]or design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference." *Id.* Then "[o]nce that piece of prior art has been

---

[3] Because Tee Turtle has not shown a likelihood of success on its infringement claims as to the D127 and D337 Patents, the Court's invalidity analysis is relevant only as to likelihood of success on the D168 Patent infringement claim.

constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art." *Id.* "Minor variations" are "insufficient to preclude a finding of anticipation because they do not change the overall visual impression of the [article]." *Id.* at 1243. *Egyptian Goddess*'s requirement that courts must consider the design as a whole does not prevent a court from "determining that individual features of the design are insignificant from the point of view of the ordinary observer and should not be considered as part of the overall comparison." *Id.*

To defeat the requested preliminary injunction, Kellytoy raises two invalidity challenges. First, Kellytoy asserts that the design patents fail because they "claim[] a clearly functional matter not the proper subject of design patents.," *i.e.*, for a plush toy to be reversible, it needs a crevice. Opp. at 12-13. Second, Kellytoy argues the design patents are invalid because the claimed "spherical shape" is anticipated and obvious in light of prior art. *Id.* (citing Wilson Decl., ¶¶ 25-29, 32-33, Mizrahi Decl. Exs. 5-9). In particular, Kellytoy notes that, in 2013, "a company called Zeptolab UK Limited release[d] a 'generally spherical toy, reversible from one position to a second position,'" *i.e.*, a character called Om Nom. *Id.* at 13.

As to Kellytoy's functionality argument, Tee Turtle responds that its design patents "do not cover all plush toys with reversible functionality," but rather, only "the reversible toys having the ornamental features depicted in Figures 1-14 of each patent." Reply at 14; *see* Am. Reply at 7-8. Because there are multiple ways to achieve reversibility, Tee Turtle argues, the crevice is not merely functional. Reply at 15. As to Kellytoy's anticipation and obviousness arguments, Tee Turtle responds that the Om Nom toy is not invalidating because Om Nom reverses from a sphere to a cube. *Id.* at 16. Because Om Nom lacks "two configurations of the same shape," Tee Turtle argues it does not invalidate the design patents. Tee Turtle argues its design patents remain valid because none of the cited prior art examples are "reversible, round, [and] plush, with a cavity on the bottom," like its Reverse Plushies. *Id.*; *see* Am. Reply at 7-8.

The Court agrees with Tee Turtle regarding functionality. As discussed above,

only the ornamental design of the crevice claimed in the D168 Patent is protected, and Kellytoy has failed to raise a substantial question concerning the notion that this crevice design is "dictated solely by the function of the article." *Best Lock Corp. v. Ilco Unican Corp.*, (Fed. Cir. 1996). Indeed, Kellytoy observes that, "having a crevice on the underside of a reversible plush toy is common in the prior art," and admits that this is "not surprising reality given that this is one of many means already known in the art through which to reverse plush toys," with "the size and shape of the crevice . . . dictated by numerous factors, including the amount of fill in the plush body." Opp. at 9. But Kellytoy fails to explain how the claimed crevice design is the only design that would function for the claimed reversible plush toy. Therefore, the Court concludes no substantial question has been raised as to functionality.

Next, the Court considers anticipation. To show anticipation under 35 U.S.C. § 102, "[a]s with a utility patent, design patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) (internal quotation marks omitted). Although Kellytoy's brief is somewhat vague on this point, it appears that Kellytoy contends that Om Nom is the purported single prior art reference. But Om Nom is not identical in all material respects to the reversible plush toy claimed in the D168 Patent. Rather, the D168 Patent claims a generally spherical design for a reversible plush toy that is identical in the toy's first and second configurations. Although Om Nom appears to have a similar spherical design in one configuration, Om Nom's second configuration is that of a box, as shown below.[4]

---

[4] The screenshots in the table that follows derive from the YouTube video cited in the Mizrahi Declaration. *See* Mizrahi Decl. ¶ 8 (citing https://www.youtube.com/watch?reload=9&v=bfcod92CzLA). The Court takes judicial notice of the posting date of this video (*i.e.*, April 2, 2013). Kellytoy also references a different Om Nom toy, but it appears this toy also lacks a spherical shape in its second configuration. *Compare* Mizrahi Decl. ¶ 9 (depicting Om Nom toy with shiny yellow fabric inside a crevice, as opposed to the Om Nom toy shown above that reverses into a brown box). An internet search suggests the other configuration is a



| D168 Patent | Om Nom |
|---|---|

Additionally, although this feature carries less weight for the reasons discussed, Om Nom has a large round opening through which to reverse his configurations, as distinct from the claimed crevice design. Thus, the Court concludes that Kellytoy has not raised a substantial question of anticipation for the D168 Patent based on Om Nom.

Next, the Court considers obviousness. When considering design patent obviousness under 35 U.S.C. §103, "[t]he central inquiry in analyzing an ornamental design" is "whether the design would have been obvious to "a designer of ordinary skill who designs articles of the type involved." *In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996). "That inquiry focuses on the visual impression of the claimed design as a whole and not on selected individual features." *Id.* "In order for a design to be unpatentable because of obviousness, there must first be a basic design reference in the prior art, a something in existence, the design characteristics of which are basically the same as the

_____

star, which is not identical in material respects to the patented design. *See* https://toywiz.com/cut-the-rope-reversible-om-nom-6-inch-plush-star/; *see also* http://ourvillageisalittledifferent.blogspot.com/2013/03/cuttherope-plush-toys-with-bonus-ar-fun.html (blog post from March 4, 2013).

claimed design." *Id.* Secondary prior art references may also be considered if there is "some suggestion in the prior art to modify the basic design with features from the secondary references." *Id.*

To raise a substantial question as to obviousness, Kellytoy again relies on Om Nom, as well as the series of prior art octopus toys referenced above discussing substantial similarity. In its Tentative Ruling issued to the parties before the hearing, the Court noted that, although Kellytoy did not submit a clear "basic design reference" as a starting point, the Court was inclined to conclude that one skilled in the art of making soft toys could have taken the suggestion for a generally spherical reversible toy from Om Nom, and combined it with the suggestion for making a reversible toy with the same shaped configurations. This suggestion arises from Switch-A-Rooz, another toy raised by Kellytoy, which features the same first and second configurations in different colors (*i.e.*, similar to Reversible Plushies with the same configuration but different facial expressions).

| Om Nom | Switch-A-Rooz |
|---|---|
|  | |
| *See* Mizrahi Decl. ¶ 9. | *See* Mizrahi Decl. ¶ 7.[5] |

In response to the Court's tentative finding, at the hearing, Tee Turtle argued that Om Nom could not serve as a primary reference because that toy was not "basically the

_____

[5] This screenshot was captured from the video cited by Kellytoy and available at https://www.youtube.com/watch?v=YeOIBe52DlA. The Court takes judicial notice that this video was posted on February 14, 2015.

same" as the claimed design, citing *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012). Kellytoy responded that Om Nom is close enough, and in any event, prior art such as the cited octopus toys are also invalidating because they do not need to be reversible to be relevant to invalidity.

Upon further review of precedent concerning design patent obviousness, the Court agrees with Tee Turtle that On Nom is not close enough to be "basically the same" as the claimed design. Thus, Om Nom cannot serve as the required primary reference. The Federal Circuit has explained that, in applying the required two-step process, district courts must first "find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design." *Apple*, 678 F.3d at 1329 (quotation marks omitted). Where "substantial differences in the overall visual appearance between the patented design and the [proposed] reference" exist, however, that reference may not serve as the required primary reference. *Id.* at 1330 (reversing district court's finding that a prior tablet design created the same visual impression as the patented tablet design where, among other differences, the prior tablet was framed and asymmetrical); *see also Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996) (sofa could not serve as primary reference to claimed sofa design because sofa did not create the same visual appearance, *i.e.*, sofa had additional sofa section where two pieces of sectional connected at a right angle (instead of triangular-shaped table connecting the pieces), and sofa had different curvature of the double front-rail design).

Here, as discussed above, although Om Nom and the design claimed in the D168 Patent both feature generally spherical, reversible toys, unlike the claimed design, Om Nom reverses into *different* configurations (*e.g.*, a box, a star). Additionally, because the D168 Patent claims a generally spherical *reversible* toy—with the ornamental design claimed in both the first and second configurations—along with the crevice design, the Court is unpersuaded that any of the cited octopus toys could serve as a primary reference. These toys lack some of the key claimed ornamental design aspects,

such as reversibility, same configurations, and crevice design, and are therefore not basically the same. *See OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997) (affirming nonobviousness finding because "none of the prior art cited by Just Toys exhibits ornamental characteristics that are the same as or similar to OddzOn's design"); *see also* D168 Patent at Claim (claiming "the ornamental design for a reversible plush toy, as shown and described"); *id.* at Fig. 1 & Fig. 8 (depicting same-shape reversible configurations). Although the Court does not resolve the validity question at this stage, on this record, the Court is persuaded that Kellytoy has not raised substantial questions as to obviousness given the lack of primary reference. Thus, the Court concludes that, for purposes of this motion, Tee Turtle has demonstrated it will likely succeed on the merits of its D168 Patent infringement claim.

### 3. Utility Patent

#### a.    *Claim Construction*

"To determine likelihood of success on the patent infringement issue, the court may construe disputed claim language as a matter of law." *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1220 (Fed. Cir. 1996). "The court then determines whether the accused device is likely to fall within the scope of the claims." *Id.* The "words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotation marks omitted). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id.* at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Observing that "[t]he terms of the Tee Turtle Patents are not overly technical," Tee Turtle asks the Court to apply plain and ordinary meaning. Mot. at 11. Tee Turtle

also provides its interpretation of what that plain and ordinary meaning should be for "first surface," "first material," "second surface," "second material," "fill material," "stitching ring," "first position," and "second position." *Id.* at 12.

Kellytoy does not address claim construction for the utility patent. The Court agrees that plain and ordinary meaning applies and will address that meaning as needed below.

## b.   Infringement

"To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).

Using independent Claim 21 as an example, Tee Turtle argues that the Kellytoy's Flip-A-Mallows practice "each and every limitation claimed in the '746 Patent." Mot. at 13.

> Claim 21 discloses:
> A reversible plush toy, comprising:
> a first material defining a first surface;
>     a second material defining a second surface;
> a fill material received between the first material and the
>     second material;
> <u>a stitching ring coupling the first material to the second</u>
>     <u>material and **trapping the fill material** between the first</u>
>     <u>material and the second material</u>, the stitching ring
>     having a ring diameter defining an opening; wherein
> in a first position, the first surface of the first material
>     defines a first exterior surface of a first body shape and
>     the second surface of the second material defines a first
>     interior surface of the first body shape, the first body
>     shape having a first body maximum diameter;
> in a second position, the second surface of the second
>     material defines a second exterior surface of a second
>     body shape and the first surface of the first material
>     defines a second interior surface of the second body
>     shape;

the second body shape substantially matches the first body
        shape and having a second body maximum diameter
        that is the same as the first body maximum diameter;
<u>the ring diameter is smaller than both the first body
        maximum diameter and the second body maximum
        diameter</u>; and
<u>to transition from the first position to the second position,
        **the first material is compressed towards the second
        material**, collapsing both the first material and the
        second material through the opening defined by the
        stitching ring **until the second material expands into the
        second body shape**</u>.

'746 Patent, Claim 21 (emphasis added to highlight limitations disputed regarding invalidity).

    With these claim limitations in mind, Tee Turtle provides the following summary claim chart in support of its infringement argument.





Mot. at 13-14; *see also* Collard Decl. ¶ 15, Ex. K (full claim chart).

As Tee Turtle notes, Kellytoy does not present any arguments against infringement of Tee Turtle's utility patent. *See generally* Opp. Therefore, for the purposes of this motion, based on the claim charts presented by Tee Turtle and summarized above, the Court assumes that Tee Turtle can more likely than not show infringement of Claim 21 of its utility patent. *See, e.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods.*, 714 F. Supp. 2d 919, 925 (E.D. Wis. 2010) (patentee was likely to succeed on merits where alleged infringer did not contest infringement), *reversed-in-part on other grounds by* 431 F. App'x 884 (Fed. Cir. 2011); *cf.* L.R. 7-12 (failure to file required document may be deemed consent to granting the motion). Accordingly, whether Tee Turtle can demonstrate likelihood of success on the merits of this claim turns on whether Kellytoy can raise a substantial question as to invalidity.

c.    *Invalidity*

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharm. Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (internal citation omitted). A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

Kellytoy argues that the utility patent is invalid because it "adds nothing to what was already available in the marketplace before the cited priority date of December 20, 2017." Opp. at 13.  Kellytoy asserts that Claim 21 (as well as the other claims) are invalid as anticipated and obvious. *Id.* Specifically, Kellytoy argues the patent is anticipated by "numerous prior art publications, most notably Laura Wilson's 2014 Chameleon – displayed on a blog from that year, and various other designs from her 2013 book." *Id.* at 14; *see also* Mizrahi Decl. ¶¶ 14-21, Exs. 10-15, 17 (summarizing

purported single invalidating prior art references). Kellytoy argues that Wilson's 2014 Chameleon, "Melos," is a "dead ringer" for Claim 21, as depicted below.

 

Further, Kellytoy argues that, "[e]ven if these references were deemed not to anticipate, at the very least, they would render claim 21 obvious to one of ordinary skill in the art, namely, anyone who has some experience with sewing or manufacture of soft goods, such as Ms. Wilson." Opp. at 16-17. Kellytoy suggests that one of ordinary skill in the art would have taken the suggestion from the reversible plush toy disclosed in USPA 15/319,184 (published on May 18, 2017)—a reversible teddy bear—which contains all of the elements of Claim 21 except stuffing, and combined it with "patent literature expressly disclos[ing] the use of fill material between two layers of a reversible plush toy." *Id.* at 17 (citing USPA 15/319,184 combined with USPN 4,614,505; *see* Mizrahi Decl., Exhs. 18-19, Wilson Decl. ¶¶ 27-29).

Tee Turtle asks the Court to disregard the claim-by-claim analysis presented by counsel because Ms. Wilson did not opine on each and every claim. Reply at 9-10. As to Wilson's 2014 Chameleon, Melos, Tee Turtle contends that it is not prior art because the record lacks "information regarding the construction of Melos, the inner composition of Melos (*e.g.*, whether it contains a fill material), any images of the underside of Melos, or how Melos reverses from one configuration to another. *Id.* at 10.

As to specific claim elements, Tee Turtle argues that Melos does not disclose:

"until the second material expands into the second body shape" (which is how the first and second material in the plushie move independently rather than together); "trapping the fill material" (rather than attaching the fill material to the first and second materials before they are joined); and "the ring diameter is smaller than both the first maximum diameter and the second body maximum diameter." *Id.* at 11-12.

Turning to obviousness, Tee Turtle argues that the reversible bear disclosed in US Patent Application No. 15/319,184 is not invalidating for two reasons. *Id.* at 14. First, the USPTO considered this reference in granting Tee Turtle's utility patent (published as U.S. Publication No. 2017/0136375). *Id.* Second, Tee Turtle argues that the bear is distinguishable because it is "comprised of two non-reversible bear heads attached at the neck and a hollow base portion and reverses by using the base portion to cover one of the two non-reversible bear heads," and Kellytoy does not even attempt to provide an obviousness theory leading from this bear to the Reversible Plushies. *Id.*

### 1.   Anticipation Analysis

Turning to anticipation, the Court first considers Linda Wilson's qualifications to testify concerning the art of reversible plush toys. Based on the evidence submitted on the present motion, the Court agrees that Wilson is a person of ordinary skill in the relevant art, that is, she is skilled in "the art of sewing, generally, and designing and assembling reversible plush toys, specifically." Wilson Decl. ¶ 4.  This is sufficient to qualify her as an expert because "an expert must possess *at least* ordinary skill in the pertinent art, [but] there is no requirement that 'a witness possess something more than ordinary skill in the art to testify as an expert.'" *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 508 (D. Del. 2017) (emphasis added) (quoting *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008)).

 Tee Turtle concedes that, "Perhaps [Wilson's] authorship of the book [*Flip Dolls and Other Toys that Zip, Stack, Hide, Grab, and Go!*] would qualify her as an expert on reversible dolls," but, Tee Turtle asserts, "the toys at issue here are plush toys, not dolls." Obj. to Wilson Decl. at 2 (ECF No. 30). The Court overrules this objection.

27

Wilson's declaration and her book, which is submitted in its entirety as Exhibit T (ECF No. 21-4), demonstrate appropriate experience in sewing and reversible toy making generally. It is immaterial that some of the toys Wilson discusses are dolls and some are not. Wilson's qualifications enable her to discuss making reversible toys and her knowledge of preexisting reversible toys in the art.

Thus, the Court will consider Wilson's testimony as it relates to whether Melos, Wilson's reversible chameleon toy from 2014, anticipates Claim 21. Because Tee Turtle disputes only whether Melos contains three claim limitations disclosed in Claim 21, the Court limits its analysis to these disputed terms. *See* Reply 11-13; Am. Reply at 6-7.

First, Tee Turtle contends that Melos does not contain the limitation: "<u>to transition from the first position to the second position, the first material is compressed towards the second material, collapsing both the first and second material through the opening defined by the stitching ring until the second material expands into the second body shape</u>." Wilson, who designed Melos, explains that, "like all of my other designs, Melos is turned inside out by compressing one side toward the other, collapsing one side through the stitching ring so that the other side can expand." Wilson Decl. ¶ 23. In addition to the photographs of Melos from her blog, Wilson provides an additional photograph of Melos showing the opening through which this compression occurs.

  

*See id.* ¶ 22.

The Court is not persuaded by Tee Turtle's attempts to distinguish Melos on this claim limitation. First, Tee Turtle claims the "filling" inside Melos is stationary (Am. Reply at 6), but even assuming this is true, Tee Turtle does not explain the relevance to this limitation, which concerns compressing the first material into the second material to reverse the configurations. It says nothing about the filling. Next Tee Turtle argues that Wilson's blog does not explain how to reverse Melos (*id.*), but Wilson explains this in her declaration, as quoted above. Contrary to Wilson's explanation, Tee Turtle speculates that all of Melos's material must move together "as a single material of a sock;" but, as explained by Wilson, Melos is constructed of more than one material and is filled with batting. To reverse the configuration, the first material is compressed toward the second material until the second configuration expands into its full shape.

Next, Tee Turtle contends that Melos does not contain the limitation: "<u>a stitching ring coupling the first material to the second material and trapping the fill material between the first and second material</u>." Am. Reply at 6. Wilson explains that, in making her "new" "flip dolls," she "add[ed] stuffing to give the bodies some substance, in part, in order to provide them with a plush feel and to avoid having them droop." Wilson Decl. ¶ 13. Wilson "eventually made a variety of characters with this design," including the "Owl and the Pussycat," which includes "filling sandwiched in between the two surfaces." *Id.* ¶¶ 13, 15. As relevant here, Melos "follows the same process" for the Owl and the Pussycat. *Id.* ¶ 22. In particular, Wilson explains that Melos "ha[s] wool batting in between the two surfaces." *Id.* ¶ 23. In Wilson's 2013-published book, the instructions for the Owl and the Pussycat do not state that batting should be sewn down as Tee Turtle contends. Rather, the instructions provide, "Lay the front body piece on top of the back body piece with right sides facing. Then lay one piece of batting on the bottom and one on the top. Pin all the edges together. Sew the sandwich together around the sides and top, leaving the bottom open." *See* Wilson Decl., Ex. T at 110 (Step 9) (ECF No. 21-4, page 33 of 50). Then, "[u]se a 1/2-inch (1.3 cm) seam allowance to sew

1  the bottoms together." *Id.* (Step 13).[6]

2  Finally, Tee Turtle contends that Melos does not contain the limitation: "the ring

3  diameter is smaller than both the first maximum diameter and the second body

4  maximum diameter." Am. Reply at 6. Wilson explains that, on Melos, "the stitching

5  ring diameter is smaller than the maximum diameter of both bodies." Wilson Decl. ¶

6  23. Wilson notes that, "This is clearly demonstrated in the pattern template (Figure 11),

7  indicated in figure 11 by the red measuring line indicating the diameter of the opening

8  and the green line indicating the widest diameter of the body." *Id.*

9

10                      **FIGURE 11**

11

12

13                

14

15

16

17

18

19

20

21  *See id.*, *available at* http://wewilsons.blogspot.com/search/label/flip%20doll.

22  ────────────────

23  [6] Although Tee Turtle omitted its argument about lack of "fill material" from its
    Amended Reply, the Court observes that the "fill material" disclosed in the patent is
24  broad enough to encompass the "wool batting" used in Melos. The '746 Patent
    explains that, "In some embodiments, fill material (*e.g.*, soft stuffing material) *may* be
25  positioned between the first and second layers, (see FIG. 7). The fill material within
    the appendages *may* provide a soft feel or plushness to the reversible toy." '746 Patent
26  at 7:55-59 (emphasis added). Even setting aside this permissive language, Tee Turtle
    has not shown that a Chameleon stuffed with wool does not have a soft feel. *See, e.g.*,
27  Wilson Decl., Ex. K (ECF No. 21-2 at p. 67 of 100) (blog noting that Melos is
    "stuffed with wool").
28

Tee Turtle argues that two-dimensional patterns cannot be used to determine diameter. Am. Reply at 6-7. But even setting aside this pattern, Tee Turtle's argument ignores Wilson's testimony on this point. Tee Turtle fails to explain how Wilson—who made Melos and who, as Tee Turtle aptly noted, "literally . . . wrote a book on reversible dolls and toys" (Reply at 13 n.12)—cannot say whether Melos's stitching ring diameter is smaller than the maximum body diameter in both configurations. *See also* Wilson Decl. ¶ 15 (noting toy designs in Wilson's book, including the Owl and Pussycat, for which Melos follows the instructions, have "a stitching ring at the opening, where the diameter of the body is larger than the diameter of the stitching ring").

Because the Court is unpersuaded by Tee Turtle's arguments in response to Kellytoy's invalid-for-anticipation argument, the Court concludes that, at this stage, Kellytoy has raised a substantial question concerning Melos's anticipation of the reversible plush toy disclosed in the '746 Patent. Therefore, Tee Turtle has failed to show a likelihood of success on the merits of its utility patent infringement claim.

## 2.     Obviousness Analysis

Even if Kellytoy had not raised a substantial question as to anticipation, the Court concludes that Kellytoy has raised a substantial question concerning obviousness, in light of combined prior art references. Reversible toys are nothing new. As Wilson notes, "the specific elements of a reversible plush toy containing two characters that fit inside one another with a fill layer, body and appendages that simulate an animal, and a stitching ring with a smaller diameter than the maximum diameter of the body already existed in [her] original flip doll designs and were disclosed in [her] Book and my public blog, years prior to December 20, 2017." Wilson Decl. ¶ 20.

Given the myriad examples of closely related prior art, there is at least a substantial question as to invalidity for obviousness in light of reversible, soft toys, including at least Om Nom, a penguin from 2013, and the frog prince hat from early

2017.[7] Additionally, even assuming arguendo that Melos from 2014 does not read on every limitation of Claim 21, Tee Turtle concedes that Melos meets nearly all of the claim limitations, making it at a minimum highly relevant prior art from an obviousness perspective.

| Om Nom | Penguin | Melos | Frog Prince |
|---|---|---|---|
|  |  |  |  |
| Mizrahi Decl. ¶ 9. | Wilson Decl. ¶ 26. | Wilson Decl. ¶ 22. | Wilson Decl. ¶ 29. |

The longstanding prevalence of reversible toys such as this, combined with the ongoing motivation to improve such toys, raises a substantial question as to obviousness. For example, in Wilson's book, which is geared toward those skilled in the art of reversible toy making, she provides one motivation to continue expanding upon this commonly understood technique by "chang[ing] the shape of the head, as long as it fits within the basic shape and the height of the dolls remains the same," and "chang[ing] the shape of the body as long as it doesn't vary too much from the main shape;" she also encourages users to use "decorations and facial features to help identify your characters" because "you want the two dolls to be different." *Id.* ¶ 19; *see also id.* at ¶ 21 ("my book specifically encourages toymakers to vary the concept and make their

---

[7] The Court notes that, on February 12, 2021, Kellytoy filed a Notice of Lodging attaching a petition for reexamination of the '746 Patent it filed with the USPTO. *See* ECF No. 39. The Court observes that, in the petition, Kellytoy submitted other prior art references, including for a "reversible stuffed doll" and a "transformable toy with reversible head"). *See* ECF No. 39-3. It is unclear why Kellytoy did not submit these prior art references as part of its invalidity argument here, but as such, the Court has not considered them in ruling on Tee Turtle's preliminary injunction motion.

own design").

The '746 Patent discloses a reversible toy that claims it "can be easily and quickly reversed between positions to present different appearances or configurations." '746 Patent at 1:26-28. There is a substantial question concerning whether one skilled in the art would have found it obvious to combine existing reversible toys with different configurations (*e.g.*, Om Nom) with those that have substantially the same configurations (*e.g.*, Melos, frog prince hat) to arrive at a simpler reversal process. This is especially true where this claimed improvement appears to be "[nothing] more than the predictable use of prior art elements according to their established functions." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).

Because substantial questions remain about anticipation and obviousness, and thus Tee Turtle cannot demonstrate a likelihood of success on the merits of its utility patent infringement claims, the Court concludes that the preliminary injunction must be denied as to the utility patent. *See, e.g., Vascular Sols., Inc. v. Bos. Sci. Corp.*, 562 F. App'x 967 (Fed. Cir. 2014) ("too many unresolved issues at this stage of the case," including on "ultimate validity to warrant the grant of a preliminary injunction").

### D.   Irreparable Harm

To obtain a preliminary injunction, the movant must also show that (1) absent an injunction, it will suffer irreparable harm; and (2) a sufficiently strong causal nexus relates the alleged harm to the alleged infringement. *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1377-1378 (Fed. Cir. 2012). A likelihood of irreparable harm means "a likelihood of substantial and immediate irreparable injury." *Id.* at 1325. Merely showing some lost market share is insufficient to satisfy this requirement. *Id.* at 1324-25. Likewise, conclusory statements and theoretical arguments by a patentee are insufficient to meet the standard. *Id.* at 1325. Instead, the patentee must support the claims of irreparable harm with concrete evidence. *Id.* Moreover, the alleged irreparable injury must be *caused* by the alleged infringement. *Id.* at 1324.

In support of its motion, Tee Turtle argues that, absent an injunction, it will be irreparably harmed by Kellytoy's Flip-A-Mallow sales because "Kellytoy's infringement is causing Tee Turtle to irreversibly lose market share and, as a result, to also lose the opportunity to use its patented product to become the market leader." Mot. at 15. Tee Turtle avers that this "constitutes irreparable harm because the market for reversible plush toys is new but is growing rapidly." *Id.* Moreover, Tee Turtle contends that "[l]oss of market share during a growth stage in the nascent market for this product constitutes irreparable harm," as does "[l]oss of the opportunity to become a market leader." *Id.* at 16. Additionally, Tee Turtle contends that, because "reversible plush products are relatively new, it is likely that, at this early stage in the market, whichever company is featured in future viral videos is likely to be associated with the entire category of reversible plush toys in consumers' eyes." *Id.* at 15. Tee Turtle also relies on purported loss of potential business opportunities, loss of viral marketing opportunities, and loss of research and development opportunities. *Id.* at 17. Finally, Tee Turtle argues loss of goodwill, injury to reputation, and price erosion support a finding of irreparable harm. *Id.* at 17-19. Tee Turtle argues it can show a causal nexus between the infringing activity and harm because Kellytoy's marketing "us[es] the patented features to drive demand for its infringing products." *Id.* at 20.

Kellytoy responds that Tee Turtle's claimed irreparable harm does not demonstrate substantial and immediate injury. Opp. at 18. Kellytoy asserts that Mr. Badie's unsupported allegations are insufficient to show that injury will occur. *Id.* Kellytoy observes that losing the opportunity to become the market leader is not the same as showing actual lost market share. *Id.* at 18. Kellytoy also avers that Tee Turtle's series of hypothetical facts about a potential future viral video featuring a reversible plush toy says nothing about the actual marketplace. *Id.* at 19. Kellytoy asks the Court to disregard Tee Turtle's conflation of the market for plush toys with the market for Reversible Plushies and again points to a lack of evidence concerning the effect of unspecified social media videos on the market. *Id.* at 20. Likewise, Kellytoy asks the

Court to reject, as speculation, Tee Turtle's arguments about loss of business opportunities, loss of research and development, loss of goodwill and reputation, and price erosion. *Id.* at 21-23. Regarding causal nexus, Kellytoy argues that, even Tee Turtle's evidence shows that customers buy Flip-A-Mallows because of their association with highly popular Squishmallows. *Id.* at 23-24. Kellytoy asserts that Tee Turtle provides no evidence that Tee Turtle and Kellytoy compete for customers. *Id.* at 24. Finally, Kellytoy avers that Tee Turtle cannot show inadequacy of legal remedies. *Id.*

The Court agrees that Tee Turtle has failed to carry its burden to demonstrate irreparable harm. As a threshold matter, Tee Turtle's conclusory statements, concerning loss of market share, loss of business opportunity, loss of goodwill, injury to reputation, and price erosion, are insufficient to show irreparable harm. *See Apple*, 695 F.3d at 1324-25.

Regarding market share, Tee Turtle does not offer any evidence tending to prove that it has lost market share. Rather, Tee Turtle states that requiring it to show lost market share is "antithetical to the concept of irreparable harm." Reply at 18. The Court disagrees: lost market share must be proven, "because granting preliminary injunctions on the basis of speculative loss of market share would result in granting preliminary injunctions in *every* patent case where the patentee practices the invention." *Automated Merch. Sys. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009) (emphasis added and internal quotations omitted).

Regarding lost business opportunity, Tee Turtle's evidence is based on "sales for reversible plush products increas[ing]," purportedly "[a]fter just a few videos featuring reversible plushies on Instagram and TikTok went viral." Mot. at 15. But Tee Turtle does not identify (1) the videos that went viral, (2) what reversible plush toy was featured in the video, or (3) any evidence to demonstrate the increase in sales. Similarly, Tee Turtle fails to submit evidence concerning purported lost business opportunities (*e.g.*, with Disney or Amazon). In response to Kellytoy's evidentiary

objections, Tee Turtle avers that it provided an example of such a viral video. *See* ECF No. 26 at ¶ 12 (directing the Court to Exhibit D to the Collard Declaration). But Exhibit D to the Collard Declaration is an article from Delish.com that discusses Squishmallows—*not* Flip-A-Mallows or any other reversible plush toy. *See* ECF No. 18-3, Ex. D at p. 15-16 ("many TikTok users post content of [the user] looking for Squishmallows in stores or opening them at home").

Tee Turtle similarly fails to provide evidence showing that the market is in a growth stage, that Tee Turtle and Kellytoy are direct competitors, or that Tee Turtle has experienced a loss of goodwill or injury to reputation. Notably, Tee Turtle's only evidence to support these assertions is the declaration of its CEO. "The unsupported, conclusory assertions of the movant's CEO are simply not sufficient to establish these facts," however. *Hoist Fitness Systems, Inc. v. TuffStuff Fitness International, Inc.*, No. 5:17-cv-01388 AB(KKx), 2017 WL 5640562, at *3 (C.D. Cal. Oct. 31, 2017) (*citing Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (irreparable harm not established by "conclusory" statements "without evidentiary support")); *see also TeleSign Corp. v Twilio, Inc.*, No. 2:15-cv-3240 PSG(SSx), 2015 WL 12532491, at *6 (C.D. Cal. Oct. 19, 2015) ("[T]he Court is troubled by Plaintiff's factual evidence, as it consists almost entirely of testimony from Plaintiff's vice president."); *Tech-Wear, Inc. v. Acme Laundry Prod., Inc.*, 38 F. Supp. 2d 1147, 1152 (C.D. Cal. 1998) (declarations from patentee's president and treasurer with "no sales figures, specific instances, or other evidentiary facts" is insufficient to show irreparable harm).

As to Tee Turtle's other stated bases for harm, it again provides neither evidence concerning lost revenue to Kellytoy, nor evidence concerning its research budget and any decrease due to the alleged infringement. In its reply, Tee Turtle merely states that, "[w]ithout Kellytoy's infringement, Tee Turtle would be the exclusive provider of reversible plush toys featuring the patented elements of its products." Reply at 19. But, as noted, irreparable harm is not established by

conclusory statements lacking evidentiary support. *Am. Passage*, 750 F.2d at 1473; *see also Straumann USA, LLC v. TruAbutment Inc.*, No. 8:19-cv-00878 JLS(DFM), 2019 WL 6887172, at *3 (C.D. Cal. Oct. 1, 2019) (no irreparable harm where movant failed to "provide[] any evidence or data showing that financial or reputational harm has resulted (*i.e.*, by demonstrating a negative impact on sales or by substantiating claims that the [patented device] has been abandoned by [customers])"); *Guntert & Zimmerman Constr, Div,, Inc. v. Gomaco Corp.*, No. 5:20-cv-04007 CJW(KEM), 2020 WL 6948364, at *9 (N.D. Ia. Oct. 14, 2020) (plaintiff's claims "lack[ed] sufficient evidence" where they lacked evidence of "projected market data, sales figures, customer surveys, circumstantial evidence, or any other support for [plaintiff's] assertions").[8]

The Court observes that an additional factor weighing against irreparable harm is Tee Turtle's delay in filing this lawsuit. Tee Turtle sent a cease and desist letter as early as March 2020. *See* Compl. ¶ 29. Then, nine months later, Tee Turtle filed this action in December 2020. Tee Turtle did not notice this motion for hearing until filing its amended motion in January 2021. Absent a good explanation, a substantial period of delay "militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *High Tech Med.*

---

[8] The Court need not decide whether price erosion constitutes irreparable harm because Tee Turtle has failed to provide evidence showing likely price erosion, or that absent an injunction such purported price erosion will lead to irreparable harm. One historical example of a product potentially being sold for a lower price, without corresponding evidence about the purported sales or impact on Tee Turtle (*e.g.*, lowering prices, otherwise losing sales as a result), is insufficient to show price erosion, especially where the only evidence submitted suggests that the sales purportedly causing price erosion have ceased. *See, e.g., Milipore Corp. v. W.L. Gore & Associates, Inc.*, No. 2:11-cv-01453 ES (SCM), 2011 WL 5513193, at *11 (D. N.J. Nov. 9, 2011) (denying preliminary injunction and finding that plaintiff did not present any evidence it suffered price erosion where plaintiff had not reduced prices); *see also* Collard Decl., Ex. J (Five Below website screenshot from March 20, 2020—nearly one year ago—showing 4.5" sloth/hedgehog Flip-A-Mallow listing for $5.00, with product "Out of stock").

*Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (collecting cases in which delays ranging from seven and one half to fifteen months undercut claims of irreparable harm).

Tee Turtle raises settlement discussions and the fact that it did not receive its utility patent until September 2020 as reasons excusing the delay. Reply at 22-23. The Court agrees that settlement negotiations may provide a good reason for delaying filing suit. Thus, where a preliminary injunction motion is otherwise meritorious, a delay involving settlement negotiations might not be a bar to finding irreparable harm. But, where there are other significant deficiencies in demonstrating irreparable harm, as is the case here, even a good reason for delay will not save a claim for irreparable harm.

Even if Tee Turtle could establish the claimed harms or potential harms, the Court notes that Tee Turtle has failed to show that such harms cannot be compensated by monetary damages. *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (noting patentee's obligation to "clearly establish[] that monetary damages could not suffice"). Tee Turtle presents only attorney argument alongside conclusory and generic theories that such harms are not compensable by damages. This falls short of making a meaningful evidentiary showing. *See Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) (reversing preliminary injunction where patentee presented "no more than attorney's argument," and noting that "neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction").

Finally, the Court need not reach the causal nexus issue given the lack of evidence supporting irreparable harm. As Kellytoy has observed, even Tee Turtle admits that Kellytoy has an existing association with the non-reversible plush toy market through its successful Squishmallows. Tee Turtle fails to offer any evidence tending to show that consumers purchase Flip-A-Mallows for their reversibility

generally or patented characteristics specifically, as opposed to their association with popular Squishmallows.

### E.   Remaining Factors

Because Tee Turtle's motion fails to make a sufficient showing demonstrating irreparable harm, the Court need not address the balance of equities or the public interest. *See e.g.*, *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011); *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994) ("we specifically decline today to require a district court to articulate findings on the third and fourth factors when the court denies a preliminary injunction because a party fails to establish either of the two critical factors").

## IV.   CONCLUSION

The Court **DENIES** the motion for preliminary injunction. The Court also **DENIES** the request to strike.

**IT IS SO ORDERED.**

Dated: February 26, 2021

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE